A buyer cannot show, in an action against him for the value of the goods, that the value of the goods to it was less than their market value, because not suited to its needs, where the purchase is admitted, and no rejection of the goods is pleaded.

2. CORPORATIONS—ACTION BY DIRECTOR—PREFERENTIAL CONTRACT.

The rule that a director of an insolvent corporation cannot obtain a preference by acts of the directors is not a defense to an action by a director against the corporation on a contract made by the directors, but is only available to defeat an execution or attachment in such action, by satisfaction of which a preference would be given.

3. COSTS—PREVAILING PARTY—SEVERAL CAUSES OF ACTION.

A defendant who defeats one of several causes of action, on the ground that the contract on which such cause of action is based is invalid, "recovers," so as to entitle him to costs, under Code Civ. Proc. § 3234, pro-

viding that, where issues of fact are joined on several causes of action, "if plaintiff recovers on one or more of the issues, and defendant on the other or others," each party is entitled to costs.

Appeal from judgment on report of referee.

Transferred from the First department.

Action by Urania P. Welling against the Ivoroyd Manufacturing Company. From a judgment in favor of plaintiff, on two causes of action, defendant appeals, bringing up for review an order of the special term denying leave to defendant to tax costs on judgment in its favor on a third cause of action. Judgment affirmed, and order reversed.

The complaint alleged in its first paragraph the residence of plaintiff, and in the second paragraph the incorporation of defendant. The third paragraph stated the first cause of action for goods sold to defendant by plaintiff's assignor, the fourth paragraph alleged a second cause of action for salary of plaintiff's assignor, as president of defendant company, under an agreement, and the fifth paragraph alleged a third cause of action for money paid out by plaintiff's assignor for defendant's benefit. The answer admits that, between the dates alleged in the complaint, plaintiff's assignor "sold and delivered to defendant some goods, wares, and merchandise, but denies they were of the value of $3,886"; admits that in October, 1892, it entered into an agreement, as alleged in the fourth paragraph of the complaint, but denies that plaintiff's assignor performed said agreement on his part; denies any knowledge or information sufficient to form a belief as to the other allegations of the complaint; alleges that, during the time mentioned in the complaint, plaintiff's assignor was a director of defendant; that defendant was at the time of the assignment of the claim to plaintiff insolvent, as plaintiff's assignor well knew; that the corporation laws of the state of New Jersey, in which defendant was incorporated, prohibit the preferring of creditors by corporations; that the assignment of the claim in suit to plaintiff was for the purpose of obtaining a preference thereon over other creditors, and a judgment would give plaintiff's assignor an unlawful preference. The answer further alleged as a defense that plaintiff's assignor was incapable of entering into the contract to act as president of defendant, because not a shareholder, and alleged, as a counterclaim, damages by reason of the failure of plaintiff's assignor to deliver goods included among those sold, as alleged in the first cause of action.

The opinion of LAWRENCE GODKIN, Esq., to whom the case was referred to hear and determine, is as follows:

The plaintiff is the wife of William M. Welling, and is the assignee of claims against the defendant, a manufacturing corporation incorporated under the laws of the state of New Jersey, which claims arose under the following circumstances: Under date of October 5, 1892, the plaintiff's assignor made an offer in writing to the defendant company (plaintiff's Exhibit C), the material parts of which are as follows:

"New York, October 5th, 1892.

"To the Ivoroyd Manufacturing Co.—Gentlemen: I hereby offer to sell to you all my machinery, dies, tools, &c., constituting the plant of my factory, now located at No. 251 Center street, in the city of New York, for the sum of fifty thousand dollars, and the performance by you of the other agreements stated below; and I further agree to accept 500 shares of the full-paid capital stock of your company in payment of the said sum of $50,000. You are to agree with me, by acceptance of this proposition, to pay me a salary of $5,000 per year in equal monthly installments, for the term of five years, commencing the 1st day of January, 1893, and I agree to perform the duties of president of your company during that time, or so much thereof as you shall require. You are also to agree to purchase any and all stock which I may have on hand at that time, manufactured, unmanufactured, and in course of manufacture, at the actual cost price."

At a meeting of the directors of the corporation held on the same day, namely, October 5, 1892, the plaintiff's assignor was elected president of the corporation, and a resolution was offered and passed that his offer be accepted. It does not appear in the minutes whether the plaintiff's assignor voted for this resolution or not, but he was present and presided at the meeting at which the resolution was adopted. At a meeting of the directors of the corporation held on May 3, 1893, a resolution was adopted providing that "the stock of manufacturing materials purchased from the Consolidated Brush & Novelty Company and William M. Welling be paid for by two, three, and four months' notes of the Ivoroyd Manufacturing Company." Under date of May 11, 1893, the plaintiff's assignor wrote the following letter to the defendant company (plaintiff's Exhibit 4):

"Paterson, N. J., May 11, 1893.

"To the Ivoroyd Manufacturing Company—Gentlemen: Owing to my desire to retire from active business. I hereby offer to resign the office of president of this company, on condition that the agreement of the company, heretofore entered into, to pay me the sum of five thousand dollars per year from January 1, 1893, for the term of five years, part consideration of the sale of my plant to said company, be continued in force; still retaining my position as director of said company during my present term as director.

"W. M. Welling.

"The conditions having been agreed to as above, I hereby resign as president of the Ivoroyd Manufacturing Company.          W. M. Welling."

On the same date the Ivoroyd Manufacturing Company executed the following instrument (plaintiff's Exhibit A):

"Paterson, N. J., May 11, 1893.

"In consideration of the resignation of Wm. M. Welling of the office of president of this company, this day accepted, the Ivoroyd Mfg. Co. hereby guaranties to the said W. M. Welling the sum of five thousand dollars ($5,000) per year for the term of five years from January 1st, 1893, part consideration of the sale of his plant to said company, in pursuance of the conditions of his letter of resignation.

"In witness whereof, the Ivoroyd Mfg. Company has caused its corporate seal to be hereto affixed, and this agreement, signed by its secretary and president and by a majority of its directors.

"The Ivoroyd Manufacturing Co.
"John Morrison, Sec.
"[Seal.]          A. L. Schwarz, Pres.
"Saml. E. Shutes.
"William Morrison."

W. M. Welling was present and presided at the meeting at which this offer of resignation was accepted and the contract in pursuance thereof was authorized.

The plaintiff sues upon three causes of action, all of which grow out of the agreements before set forth, made between the plaintiff's assignor and the defendant company, of which he was president and director. These contracts were made for the plaintiff's benefit, while he was a director and president of the defendant, and were adopted and ratified at meetings at which he was present and presided. On well-settled principles of law regulating the dealings between agents of corporations and a corporation, the contracts would appear to be invalid, and I do so hold them to be; but I believe a part of these agreements to be saved by the principle that, if the directors or other agents of a corporation supply it with money or other property, under a pretended contract with themselves, and the money or property is properly used in carrying on the company's business, or in adding to its assets, they are entitled to recover the value of the money or property so supplied and used in an action against the company. "The obligation of the company to pay, under these circumstances, does not rest upon any actual contract with the directors, but it is a duty which the law imposes, for reasons of justice, to make fair compensation for what has been properly received and applied." Mor. Priv. Corp. § 526; Gardner v. Butler, 30 N. J. Eq. 702. "The general rule is that, if an agreement is legally void and unenforceable by reason of some statutory or common-law prohibition, either

party to the agreement, who has received anything from the other party, and has failed to perform the agreement on his part, must account to the latter for what has been so received. Under these circumstances, the courts will grant relief, irrespective of the invalid agreement." Mor. Priv. Corp. § 721, and cases cited. I think that these principles apply to the first cause of action, and that there should therefore be a recovery upon this cause of action, if the plaintiff has established the fact that her assignor has supplied the defendant with property.

During the month of March, 1893, and in June of the same year, plaintiff's assignor sent to the defendant certain goods, wares, and merchandise, manufactured and unmanufactured, which he claims was the stock which he had on hand on January 1, 1893. The defendant, in its answer, admitted the delivery to it of goods, but denied their value as pleaded, and endeavored at the trial to introduce evidence to show that the goods delivered were not suitable for the business of the company. This evidence was excluded, as the only question under this part of the contract seemed to be, did the plaintiff deliver to the defendant the stock which he had on hand, and what was its actual cost price? The plaintiff's assignor testified with particularity in regard to each item, as to its cost price, and the total, as testified to, aggregated $3,056.09. This evidence, in my opinion, has not been successfully rebutted. There was evidence that one of the defendant's officers took a list of these goods, and it was proved that the goods were delivered at the defendant's factory at Lansingburgh. Evidence was also introduced tending to show that it was agreed upon between plaintiff's assignor and the defendant's officers, or some of them, that the defendant was indebted to the plaintiff for these goods to the amount of about $3,400. I think that the plaintiff has established her right to recover upon this cause of action by a fair preponderance of evidence, and I have decided to give her judgment thereon for the sum of $3,056.09.

As to the second cause of action, whether regarded as a contract, by which the defendant agreed to employ the plaintiff as president for five years from the 1st day of January, 1893, under the proposition of October 5, 1892, or as a guaranty of a pension of that amount, under the instrument of May 11, 1893, there does not seem to be any principle of law upon which this claim can be maintained. I do not see how the directors of a corporation, whose officers are to be elected annually by the board of directors, who are also to be elected annually, can bind the corporation to employ any one man as president for five years at a fixed salary, by an agreement made at a meeting of the directors at which the beneficiary of this contract presided. I believe the decision of the general term of the First department of this state in the case of Beers v. Insurance Co. to be a controlling and precise authority that such a contract is ultra vires and invalid (Beers v. Insurance Co., 66 Hun, 75, 20 N. Y. Supp. 788; Guild v. Parker, 43 N. J. Law, 430; Gardner v. Butler, 30 N. J. Eq. 702); and I think that, under the complaint, and the variance in the proof offered to sustain the second cause of action, the defendant was entitled to avail itself of this defense, whether it had been originally properly pleaded or not (Milbank v. Jones, 141 N. Y. 347, 36 N. E. 388). I have therefore decided to direct judgment for the defendant upon the second cause of action.

Upon the third cause of action, I think that judgment should be directed for the plaintiff for $92. The claim is that moneys were paid out by the plaintiff's assignor to the use of the defendant, and at its request. The plaintiff's assignor testified that he paid out $92 for taking down the plant, which he sold to defendant. I am of the opinion that there should be a recovery for this amount. As to the money which he claims to have expended "for the running of the company, to get out samples, and for wages of an engineer and bookkeeper," the evidence of authority for, and the necessity of, these payments is contradictory and unsatisfactory, and I have decided that, upon the evidence as a whole, in regard to this part of this cause of action, the plaintiff has not made out her case.

The defendant, in its answer, set up various defenses to all three of the causes of action, and pleaded a counterclaim for the damages for failure on the part of the plaintiff's assignor to deliver to the defendant all of his plant, and for delay in delivery until after January 1, 1893. Upon the merits, I am of the opinion that this counterclaim has not been sustained by the evidence. There was no satisfactory evidence given to show that actual ascertainable pecuniary

damage was caused to the defendant, if any, by the delay in delivery of the goods. There was some evidence to show that a certain brush machine, named on a schedule given by the plaintiff's assignor to the defendant, had never been delivered; but no satisfactory evidence was produced of the value of this brush machine, or the damage caused to the defendant by its nondelivery, and it appeared that the brush machine was not part of the plaintiff's assignor's plant, and never was at his factory.

The defense set up to all the causes of action that the plaintiff is not the real party in interest, and that the assignment to the plaintiff by her husband was invalid, and for the purpose of enabling him to gain an unlawful preference in the distribution of the assets of the corporation, I do not think well taken. Even assuming that the assignment was merely colorable, and without consideration, still it was good, in so far as it gave the plaintiff the right to sue (Sheridan v. Mayor, etc., 68 N. Y. 30; Bedford v. Sherman, 68 Hun, 317, 22 N. Y. Supp. 892; Armitage v. Mace, 96 N. Y. 538; Fruhauf v. Bendheim, 127 N. Y. 587, 28 N. E. 417); and, even admitting that the object of the assignment was to enable the plaintiff's assignor to get a preference over other creditors of the defendant, I do not think that the preference which it is claimed that the plaintiff or her assignor may have obtained by levy of the warrant of attachment is an unlawful preference.

The decision in the case of Throop v. Lithographing Co., 125 N. Y. 530, 26 N. E. 742, was expressly based upon the statute of the state of New York, and the court says that it reached its conclusion with some hesitation, and three of the judges dissented. Under familiar rules of construction, therefore, this case is only authority upon a state of facts precisely similar to those there presented. It is well settled that the statute relied upon in the Throop Case has no extraterritorial force (Hill v. Power Co. [Sup.] 18 N. Y. Supp. 813; Coats v. Donnell, 94 N. Y. 168); and there is no such statute in the state of New Jersey, nor do preferences of creditors by corporations seem to be prohibited in the state of New Jersey. In that state a corporation may prefer one creditor over another, and it may secure one of the directors by mortgage, although the appointment of a receiver is at the time contemplated (Wilkinson v. Bauerle, 41 N. J. Eq. 635, 7 Atl. 514; Whittaker v. Bank [N. J. Ch.] 29 Atl. 203; Bergen v. Fishing Co., 42 N. J. Eq. 397, 8 Atl. 523); so that, assuming everything claimed by the defendant,—such as the insolvency of the defendant, the knowledge of its insolvency on the part of the plaintiff's assignor, and the object of his assignment to his wife, and the result of that assignment, and the levying of the warrant of attachment,—still I cannot hold that the preference which the plaintiff thus obtained by the attachment is an unlawful one.

Upon the whole case, therefore, I direct judgment for the plaintiff upon the first cause of action for the sum of $3,056.09, judgment for the defendant upon the second cause of action, judgment for the plaintiff for $92 upon the third cause of action, and judgment for the plaintiff upon the counterclaim.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

J. K. Long, for appellant.
P. Q. Eckerson, for respondent.

CULLEN, J. The plaintiff, as assignor of her husband, William M. Welling, sued the defendant on three causes of action,—the first for goods sold and delivered, the second for salary of the plaintiff's assignor as president of the defendant, and the third for moneys expended for the defendant's benefit. The referee reported in favor of the plaintiff on the first cause of action, and for part of the claim the subject of the third cause of action, and for the defendant on the second cause of action. The defendant moved for leave to tax a bill of costs on its recovery on the second cause of action. This application was denied. Judgment was entered in favor of the plaintiff on the report of the referee, with costs. From that judg-

ment this appeal is taken, and the defendant gave notice of its intention to review the order denying it a bill of costs.

The learned referee wrote an elaborate opinion upon his decision of the case. It deals so fully with the questions of fact involved that it is unnecessary to review those questions further than to answer some criticisms on his decision made by the appellant. We think the answer of the defendant did not put in issue the sale and delivery of the goods claimed to have been sold by the plaintiff's assignor to the defendant. The answer simply put in issue the value of the goods. The learned referee held that the written contracts under which these sales were made, and also the services rendered by the plaintiff's assignor, and the subject of the claim in the second cause of action, were invalid, on account of the relation the plaintiff's assignor bore to the defendant,—that of director. He held, however, that the defendant, having received and appropriated the goods sold, was liable for their value, apart from the validity of the written contract. The only evidence of the value of the goods sold, which were partly manufactured, and partly in process of manufacture, or raw stock, was their cost price. The contract between the parties provided that the plaintiff's assignor should be paid for them at such price. In his opinion the referee seems to have regarded this provision as controlling; but, as he had held that contract void, we do not see how the provision as to the price to be paid could have any effect. The plaintiff was only entitled to recover the fair and reasonable value of the goods. But the cost of the goods was undoubtedly some evidence of their value; in fact, in this case it was the only evidence offered on either side, and it is sufficient to uphold the finding of the referee in this respect.

No error was committed in refusing to allow the defendant to show that the goods were of less value to it than their reasonable market value. The argument of the appellant that it should have been allowed to prove that the goods were not suitable for defendant's purposes, or that it did not require them, is apart from any question raised by the pleadings. It did not deny that the plaintiff's assignor sold the goods, and it did not allege any rejection. The claim that the defendant should have been allowed its counterclaim to the extent of $5,000, the value of the brush machine, which it is claimed the plaintiff's assignor agreed to sell to it, is not well founded. It was not part of the plant in Welling's factory, in Center street, which he had agreed to sell to the defendant, but was then at Brooklyn, in the process of construction. The appellant asserts that it was included in the schedule part of the bill of sale subsequently executed by Welling to the defendant. I can find no evidence of this fact in the case. But, assuming it to be the fact, by that bill of sale the title passed to the defendant. There is no evidence that Welling ever converted it, or refused to deliver it. We can therefore see no ground on which this set-off or counterclaim can be sustained, though we differ from the referee in his opinion that the proof of the cost of the machine was not sufficient evidence to justify a finding of its value.

The plaintiff's assignor was a director of the defendant, a foreign

corporation, organized under the laws of the state of New Jersey. Shortly before the commencement of the action, he transferred to the plaintiff his claims against the defendant. The defendant, in its answer, set forth the relation the plaintiff's assignor bore to the defendant; the assignment to the plaintiff; alleged that at the time the defendant was insolvent, and unable to pay its debts; and that the assignment was made to the plaintiff for the benefit of the assignor, with intent to get a preference in the payment of his claims over those of other creditors of the corporation. The referee disposed of this defense on the ground that the law of this state prohibiting transfers by corporations in contemplation of insolvency did not apply to a New Jersey corporation, and that by the laws of New Jersey preferential transfers were not illegal. We are inclined to the opinion that the referee erred in his determination of the law of the state of New Jersey on this subject. The case of Montgomery v. Phillips, 53 N. J. Eq. 203, 31 Atl. 622, a later decision than any cited by the referee, holds that a director of an insolvent corporation cannot obtain, by the action of the board of directors, a preference over other creditors of the corporation. But, however this may be, and, also, however the question may be determined whether the laws of this state affect the disposition of property of insolvent foreign corporations doing business within this state, we think that the question does not properly arise as a defense to the action. In Throop v. Lithographing Co., 125 N. Y. 530, 26 N. E. 742, the question arose on a motion to vacate an attachment, which the plaintiff had obtained in the action. It was there held that the director of a domestic corporation could not, by attachment, obtain a preference in the payment of his claim. But in'that case the objection was raised by a motion to vacate the attachment, which was granted. The only other case on the subject of importance is that of Kingsley v. Bank, 31 Hun, 329, the reasoning of which is referred to with approval by the court of appeals in the Throop Case. In the Kingsley Case a director had recovered judgment against the insolvent corporation, and, under an execution issued on the judgment, levied on the property of the corporation. The action was brought by the receiver of the corporation to set aside the judgment and execution, as creating an illegal preference. The court held that the director had the right to bring the action, that there was no statutory restraint upon it, and that it might be necessary and proper, so as to determine the existence, validity, or extent of the claim of the director against the company. But it was held that he had no right to obtain a preference by the execution levy on the assets of the corporation. In accordance with this determination, the judgment was allowed to stand, but the execution and levy under it were set aside. Therefore, Kingsley v. Bank is authority that the facts pleaded on this subject by the defendant do not constitute a defense to the cause of action, but that relief against an unlawful preference must be obtained in another way. Here the plaintiff obtained an attachment, and we may assume has levied execution on her judgment upon the attached property. If the proceedings taken by the plaintiff to obtain satisfaction of her

claim have resulted in an unlawful preference in favor of a director or officer of the corporation against other creditors, the defendant may obtain relief by a motion to vacate her attachment, and to set aside the execution, or the receiver of the corporation may maintain an action to set aside such attachment and execution; but we think that the facts shown do not constitute a defense to the action.

We are of opinion that the defendant was improperly denied its costs. As to the second cause of action, it obtained, not a nonsuit, but an affirmative finding in its favor that "judgment should be entered for the defendant upon the second cause of action set forth in the complaint," upon the ground that "the contract upon which said cause of action is based is invalid." This effectively disposed of that cause of action. No new suit upon it can ever be brought. It is, therefore, precisely such a case as is stated in the opinion of Judge O'Brien in Burns v. Railroad Co., 135 N. Y. 268, 31 N. E. 1080, entitles the defendant to his costs, within the provisions of the Code. In Moosbrugger v. Kaufman, 7 App. Div. 380, 40 N. Y. Supp. 213, the appellate division in the Fourth department, by a vote of three to two, in a case substantially the same as that now before us, held that the defendant was not entitled to costs. We look upon this decision as opposed to the doctrine of the Burns Case; and, while it may be that the statement of the court of appeals on this question was obiter, and not necessary to the determination of the question before it, it certainly was related to the subject-matter, and fairly proceeded from its discussion. It should, therefore, be regarded as controlling authority. The case of Dougherty v. Insurance Co., 3 App. Div. 317, 38 N. Y. Supp. 258, is not in point. There there was not a decision of the second cause of action in favor of the defendant. On the contrary, the plaintiff on that cause of action recovered three dollars.

Judgment appealed from should be affirmed, with costs, except that the order appealed from should be reversed, with $10 costs and disbursements, and motion granted, with $10 costs; and that such costs and the costs of the action as they may be taxed by the defendant be applied upon the judgment hereby affirmed, and such judgment reduced accordingly. All concur.