(59 App. Div. 555.)

### CRITTENDEN v. BARTON.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1901.)

BANKRUPTCY—INSOLVENT FIRM—PAYMENT OF CLAIMS—UNLAWFUL PREFERENCE —KNOWLEDGE OF CREDITOR.

    Bankr. Act 1898, § 60, subd. "b," provides that if a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of a petition and before the adjudication, and the person receiving it shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property, or its value, from such person. A firm, one member of which was a brother of defendant, paid defendant's claim in full one month prior to an adjudication that the firm was bankrupt by borrowing the money from defendant's brother-in-law, to whom they executed a chattel mortgage, and gave immediate possession of the firm's property. Defendant knew at the time that several suits were pending against the firm on undisputed claims, and that the company was on the verge of insolvency. Held, that the payment of defendant's claim constituted an unlawful preference, as he had reasonable cause to apprehend that a preference was intended.

Appeal from trial term, Monroe county.

Bill by T. Franklin Crittenden, as trustee in bankruptcy of the estate of Frederick Porschet and Frank C. Barton as co-partners under the firm name of Porschet & Co., against Evan J. Barton. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Hiram R. Wood, for appellant.

Abraham Benedict, for respondent.

SPRING, J. This action was commenced February 24, 1900, by the plaintiff, as trustee in bankruptcy, assailing a payment of $542.50 made to defendant by Porschet & Co., a firm of retail meat dealers in the city of Rochester, on the ground that such payment was an unlawful preference, and in violation of the national bankruptcy act, which became a law in 1898. The defendant succeeded upon the trial, but we think that the weight of evidence was against him, and that

a reversal of the judgment is necessary. The firm of Porschet & Co. was composed of Frederick Porschet and Frank C. Barton, and began business in the spring of 1897. In the early fall of 1899 the company was heavily in debt, owing many demands which were overdue. The defendant, who was a brother of said Frank C. Barton, held a note against the firm of $542.50, and his father a note for about the same sum. On September 6th the co-partners borrowed of one Joel, a brother-in-law of said Frank C. Barton, $1,100, and gave to Joel a chattel mortgage on the machinery and tools of the firm. The avails of the loan were used to pay the notes of the defendant and his father. The chattel mortgage was promptly filed, and on the same day another chattel mortgage to secure the payment of the sum of $1,300 was given to the Commercial Bank of Rochester, and these mortgagees at once took possession of the mortgaged property. Judgments were soon recovered by several creditors of the firm, and on October 29th following the two co-partners individually and as members of the firm were adjudged bankrupts in an involuntary proceeding commenced by the creditors. It is evident that one of the cardinal principles of the national bankruptcy law is the preventing of preferences among the creditors of a bankrupt. The whole scheme of the act is founded upon an equal distribution of his assets among his creditors. Section 3 of the act, defining of what acts bankruptcy consists, includes "the transfer of any portion of his property" by the insolvent "with intent to prefer" such creditor. Section 67, subd. "c," brings within its condemnation any lien created within four months of the filing of the petition in bankruptcy upon the estate of the insolvent, where it works a preference, and the person benefited thereby "had reasonable cause to believe the defendant was insolvent, and in contemplation of bankruptcy." Section 60, with which we have particular concern in this case, relates to preferred creditors. Subdivision "a" prescribes that a preference shall be deemed given when an insolvent person "has procured or suffered judgment" against him, or transferred any of his property, "and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Subdivision "b" of this section is as follows:

"If a bankrupt shall have given a preference within four months before the filing of a petition or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It will be seen, therefore, that actual belief or knowledge by the person benefited by the transfer that a preference was designed is not essential to enable the trustee to attack successfully the transfer; but, if the facts are sufficient to put the transferee upon inquiry, then the property, or its value, must be returned to the estate of the insolvent. What constitutes "reasonable cause to believe" is a question of fact, and each case depends upon its own peculiar circumstances, and no rigid rule can be established applicable to every case.

As in actions of fraud, or any action where the question of intent is potential, the misconduct or innocence of the person benefited must be arrived at from all the facts and circumstances which surround the transaction attacked. A brief review of the salient facts which we deem pertinent in this case may not be amiss. An afternoon paper of the city of Rochester in its issue of August 31, 1899, published a statement that an action had been commenced against Porschet & Co. by Morrell & Co. to recover $1,180. The defendant saw this item the day it appeared, and was alarmed at the situation, and at once talked with one of the partners, and was advised by him that a check for over $500 had been sent in payment of the Morrell account, that the balance was not yet due, and the matter would be adjusted. Another demand, held by Crittenden & Co., was sued in the municipal court of Rochester on September 1st, and defendant was also apprised of the pendency of that action, but was informed that the Crittendens had promised that the suit would not cause Porschet & Co. any trouble, and would not be pressed. Defendant also inquired of the bookkeeper as to the business of the firm, and referred particularly to the Morrell action, and was advised that a check for half that account had been mailed, and that the balance would be arranged satisfactorily. The defendant testified that his suspicions were allayed by the responses he obtained to his inquiries, and believed that Porschet & Co. were solvent, and apprehended no collapse; but his conduct does not confirm his testimony. He daily insisted that his claim and that of his father be paid or secured. On the evening of September 5th the defendant and the members of the firm went to the office of the attorney for defendant at the latter's solicitation, and there they were importuned to pay the defendant and his father, and, as a last resort, that judgment be confessed in their favor. The co-partners declined to pay or confess judgment, and stated that their busy season had begun, and that they expected to continue their business. The defendant testified that he had induced his debtors to meet his attorney because he was alarmed over the situation, but that his fears were dispelled by the information imparted to him at that time. Again, his story finds its contradiction in what occurred on the succeeding day, for the money was loaned by the brother-in-law, the chattel mortgage given, the notes of the son and father paid, and the property turned over to the mortgagees on that day. It cannot be possible that at this interview on the evening of the 5th everything was running along placidly with this firm, for the next day, without any new complications arising, they gave these mortgages, and permitted their business to be closed up. It appears that at that time four actions on undisputed claims were pending against them; that there were other demands overdue; that they were strenuously pressing their solvent creditors for money; that the check sent to Morrell & Co. was worthless, as the drawee had no money to meet it; and the conclusion that the firm in fact was insolvent is not a violent one, even when viewed from the standpoint of September 6th. In considering the conduct of the actors in this transaction, we cannot overlook the relations existing between them. The father and son were the beneficiaries of this loan,

69 N.Y.S.—36

which was made by a brother-in-law, who took possession of the mortgaged property. We realize that, even if the design of Porschet & Co. was to give an unlawful preference to the defendant, that fact alone does not vitiate the payment to him. The test is whether he had "reasonable cause" to apprehend that a preference was intended; but his intention is not to be dependent wholly upon his own testimony that he was innocent. Defendant's conceded knowledge of certain cogent facts which cast suspicion upon the assurances of Porschet & Co. that they were in no danger of failure, the vigilance of defendant to get his pay, the manner in which it was obtained, and the swift downfall of the firm on the very day of payment, and the blood ties of the parties, condemn the transaction too strongly for it to be cleared up by the testimony of the parties interested. The defendant possessed sufficient information to put him on inquiry into the condition of the affairs of this firm. On the evening of the 5th his apprehension subsided, as he would have us believe. The firm at that time possessed no money with which to pay, and it was entirely apparent that their ability to do so depended upon their success in continuing the business. On the next day both claims were paid in full. The sudden change in the financial strength of his debtors apparently did not attract the defendant's attention. He did not inquire where the money came from. He took it as a matter of course, as if money was a surplus commodity with this hard-pressed firm. Taking into consideration all of the facts which confessedly he did know at the time his note was paid, they constitute a chain of circumstances which, to any reasonable man of ordinary prudence and discretion, called for inquiry on his part. Actual belief in the condition of affairs is not necessary to make this an unlawful preference, but the basis of liability is whether, being a man of good judgment and reasonable prudence, he ought to have realized that this firm was in precarious circumstances, and that he might be getting an advantage over its other creditors. All that was realized from the entire property was $3,239.60, while the liabilities aggregated $11,334.24, and the inventory taken at the instance of the referee by disinterested appraisers showed the value of the assets $7,119.45, which left a deficiency, even on that basis, of over $4,000. The members of this firm had by chattel mortgages, principally to relatives, turned over all their individual property, so that they were unable to contribute anything towards the firm obligations. That they understood they were giving the defendant and his father a preference over the other creditors is not a subject of controversy. We have considered the testimony in this case with care in the desire, if possible, to uphold this judgment, and vindicate the defendant from the charge that he had reasonable cause to understand that Porschet & Co. were in imminent financial peril. We are forced to the contrary conclusion, and believe that the aim of the statute would be thwarted if this judgment should be sustained.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.