(63 App. Div. 498.)

SEBRING v. WELLINGTON.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. BANKRUPTCY—PREFERENCE—PRE-EXISTING DEBTS.

An insolvent executed a mortgage transferring all his personalty to a creditor, reciting that it was designed as security for money loaned and advanced. Previous to its execution, the insolvent, to satisfy a defalcation, borrowed from such creditor, to whom he was already indebted, promising to secure him in case of financial embarrassment, and the mortgage was made pursuant to such promise. *Held*, that such mortgage, being given as security for a pre-existing debt, was a preferential transfer, within the federal bankruptcy law.

2. SAME—INTENTION TO PREFER—NOTICE.

Where a creditor takes a mortgage from an insolvent, knowing that the latter had been deprived of a position because of a defalcation, that his principal indorser had died, and that several of his notes had gone to protest, he is chargeable with notice that such mortgage was intended to give him a preference, making it voidable by his trustee in bankruptcy, under the federal bankrupt law.

3. SAME—RECOVERY OF PROPERTY—VALUE—EVIDENCE.

In a suit by a bankrupt's trustee to recover certain property transferred as a preference, evidence as to the amount realized from a private sale of the mortgaged property by a party who purchased it of the mortgagee is inadmissible on the question of value.

Spring and Rumsey, JJ., dissenting.

Appeal from special term, Steuben county.

Action by James O. Sebring, as trustee of the estate of David McKee, against Quincy W. Wellington. From an order denying his motion for a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Waldo W. Willard, for appellant.

Warren J. Cheney, for respondent.

ADAMS, P. J. The plaintiff, as trustee in bankruptcy of one David C. McKee, brings this action against the defendant, a banker residing and doing business in the city of Corning, to recover the value of certain personal property transferred by the bankrupt to the defendant under circumstances which it is claimed created a voidable preference, within the provisions of section 60 of the federal bankrupt law, which reads as follows, viz.:

"Sec. 60, Preferred Creditors. (a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. (b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of a petition and before the adjudication, and the person receiving it, or the person to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

And it seems to be conceded that, in order to render a preference voidable within the provisions of this section, it is necessary to establish four facts, viz.: (1) The insolvency of the transferror; (2) the obtaining by one creditor of a greater percentage of his debt than any other creditor of the same class; (3) the giving of a preference within four months before the filing of the petition in bankruptcy; and (4) reasonable cause on the part of the creditor to believe that a preference was intended.

The method by which the illegal preference was accomplished in this case was a chattel mortgage upon a stock of jewelry, silverware, clocks, musical instruments, etc., contained in a store occupied by the bankrupt at No. 54 Pine street, in the city of Corning, N. Y. This mortgage was executed and delivered on the 12th day of January, 1899, at which time it is conceded that the mortgagor, David C. McKee, was insolvent. It is likewise established beyond all controversy that the effect of this mortgage was to transfer to the defendant substantially all the personal property then owned by the mortgagor, and that the defendant was consequently secured for a greater proportion of his debt than any of the mortgagor's other creditors. It further appears that the petition in bankruptcy was filed in the month of February, 1899, and that McKee was adjudged a bankrupt on the 1st day of April, 1899, which was within four months after the execution of the chattel mortgage. It follows, therefore, that the only essential elements of the plaintiff's

cause of action about which there is or can be any controversy are the alleged giving of a preference by the bankrupt, and the existence of a reasonable cause upon the part of the defendant to believe that the chattel mortgage in question was intended to accomplish that result.

In support of the defendant's contention that the chattel mortgage was not a preferential transfer of property within the inhibitory principle of the bankrupt act, it is asserted that it was in part, at least, a mere security for a present advance, instead of one for pre-existing indebtedness; and, in order to determine the force of this contention, it becomes necessary to examine with some care the facts of the case, for it is undoubtedly true that a party in failing circumstances, but hoping to overcome his business embarrassments, violates no principle of any bankrupt law by pledging his property for money lent him in good faith, provided the money is lent at the time the pledge is made, and the lender has reason to suppose that the purpose of the loan is to give encouragement to the hopes of the party borrowing. Tiffany v. Boatman's Inst., 85 U. S. 375, 21 L. Ed. 868; Clark v. Iselin, 88 U. S. 360, 22 L. Ed. 568.

It seems that, in connection with his jewelry business, McKee was acting as ticket agent at Corning for the Delaware, Lackawanna & Western Railroad Company; that in December, 1898, it was discovered that he was a defaulter to that company in the amount of $461.77; and that on the 16th day of that month his wife applied to the defendant for financial aid in order to extricate her husband from the consequences of his defalcation. McKee had been a customer of the defendant's bank for many years, his principal relation being that of borrower, and at this time the bank held his notes for several thousand dollars, and his account was overdrawn. At first the defendant gave Mrs. McKee but little encouragement to expect any assistance, but he afterwards yielded to her importunities, and promised to advance whatever her husband's deficiency proved to be, and also to pay one or two outstanding checks. Some conversation then ensued relative to security, and the defendant finally said that he would give Mrs. McKee a certificate of deposit for the deficiency of $461.77, and that when the checks were in she could make up the security. A settlement was thereupon had between McKee and the railroad company, the defendant furnishing the money therefor, and subsequently a check for $58 upon the defendant's bank was paid.

It does not appear that any immediate steps were taken to furnish security for this accommodation, but McKee testified, and in this he is not contradicted, that there were times previous to January 11, 1899, when he had conversations with the defendant about securing him for what he was owing the bank in case he ever had financial difficulties; that he promised the defendant that, if he could proceed no further, he would notify him; and that pursuant to this promise he did notify him on the day above named that he wished to see him. The defendant thereupon called at McKee's house, and was informed by him that he wished to give him (Wellington) a chattel mortgage as security for what he was owing.

The defendant thereupon prepared a statement of McKee's indebtedness to the bank, showing that, including the $461.77 paid to the railroad company and an overdraft of $143.54, it amounted to the sum of $3,554.03, and for this amount the mortgage in question was executed the following day; it being stated in the body of the instrument that it was designed as security for money loaned and advanced "on various occasions by the said Quincy W. Wellington to me." The property specified in this mortgage embraced all of which the mortgagor was the owner, and soon after the execution and delivery of the mortgage it was sold at public sale and bid in by the defendant for the sum of $500.

The foregoing facts are undisputed, and we think it requires no argument to show that they establish beyond all question that this mortgage was not given, either in whole or in part, as security for a present advance, but for a pre-existing indebtedness; that its effect was to create a preference in favor of the defendant or his bank; and that consequently, within both the letter and the spirit of the bankrupt act, it was voidable, at the plaintiff's option, provided the mortgagee had reasonable cause to believe that a preference was thereby intended. Crittenden v. Barton, 59 App. Div. 555, 69 N. Y. Supp. 559; Bucknam v. Goss, Fed. Cas. No. 2,097; In re McKay, Fed. Cas. No. 323; Graham v. Stark, Fed. Cas. No. 5,676.

That the defendant did know, or ought to have known, the object for which his security was given, seems to be established by proof equally clear and conclusive. McKee's financial condition had changed materially between the 16th day of December, when the arrangement was made to protect his deficit and overdraft, and the 12th day of January, when the chattel mortgage was given. During this interval he had been deprived of his agency for the railroad company, and his principal indorser had died, both of which facts were known to the defendant. Several of McKee's notes had gone to protest at the defendant's bank, and two of them were concededly worthless without some additional security. Moreover, McKee himself was sick and discouraged, and had sent for the defendant in fulfillment of a promise made to the latter that whenever he found himself in financial difficulty he would secure him. That McKee intended, through the medium of this mortgage, to secure and prefer the defendant, is not, and, in the circumstances of the case, cannot well be, denied, and that the defendant, with his large business experience, must have been aware of such intention, is too apparent to admit of any question; and we are therefore of the opinion that all the essential elements of an avoidable preference were so clearly established as to justify the trial court in withdrawing that branch of the case from the consideration of the jury, and in submitting to them the question of value only. As bearing upon this question, it is contended that the trial justice erred in excluding evidence of the amount realized from the sale of the chattel mortgage property by the party who purchased it of the defendant. It seems that shortly after bidding in the property at the chattel mortgage sale the defendant disposed of it to one Robert W. Terbell, who thereafter from time to time added to the stock and sold it as

best he could. In doing this he was assisted by one Sternberg, who was called as a witness for the defendant, and, after testifying that he helped Terbell sell the stock at private sale and at auction, was asked what it sold for. To this question an objection was interposed, which was sustained by the court, and an exception was duly taken. Thereupon Terbell was called to the stand, and, in reply to an inquiry by the court as to what was expected of this witness, the defendant's counsel said: "I propose to show what this stock brought at private sale immediately after the auction sale that has been testified to." This offer was likewise excluded, and another exception taken. We think these rulings of the trial court were right; for, although Sternberg had testified that the stock was sold at both private and public sale, yet it was the manifest purpose of the defendant's counsel, as he frankly declared, to show what it brought at private sale, and this we think he was not entitled to do, under the circumstances of this case. Latimer v. Burrows, 163 N. Y. 7, 57 N. E. 95.

The general rule, where the value of personal property having a market value is sought to be established, is to prove such value by witnesses qualified to speak of it (Jones v. Morgan, 90 N. Y. 4, 43 Am. Rep. 131); and while undoubtedly there are exceptions to this rule, one of them being that under somewhat peculiar circumstances the amount subsequently obtained on a private sale between other parties may be considered as some evidence of value (Parmenter v. Fitzpatrick, 135 N. Y. 193, 31 N. E. 1032), yet we think this case fairly falls within the rule, and not within any of its exceptions.

The property embraced in the chattel mortgage had a market value, and evidence thereof was given by witnesses who had seen the property and inventoried it, and thus had qualified themselves to speak of its value. To have allowed third parties to testify to what the property brought at a subsequent private sale, when its character had more or less changed, would furnish most unsatisfactory evidence of value, at the best, and it would establish a rule which, as is pointed out in Latimer v. Burrows, supra, would be fraught with serious consequences. The circumstances under which such evidence was declared admissible in Parmenter v. Fitzpatrick were very peculiar, and, if we correctly apprehend the more recent decision of the court of appeals, the rule which permitted its admission in that case is one of exceptional application, which ought not to be tolerated in ordinary circumstances.

We deem it proper to add that there is nothing in the record before us which tends to show any actual fraudulent intent on the part of the defendant. He was simply offered a preferential security for what was owing him, and in accepting the same unfortunately violated a provision of a comparatively recent law, which rendered his security unavailing for the purpose for which it was designed. The order appealed from should be affirmed.

Order affirmed, with costs.

McLENNAN and WILLIAMS, JJ., concur.

SPRING, J. (dissenting). On the 12th of January, 1899, the appellant purchased the property in question for $500. Within 10 days he sold it to one Terbell, who shortly after sold it at public auction and private sale. There was a pointed conflict on the trial in the testimony over the value of this property. Harry J. Sternberg, a witness on behalf of the appellant, testified that he had assisted Terbell in selling this property at private sale and at auction, and was asked, "Do you recollect what it was sold for?" The objection made by respondent's counsel was sustained, and an exception taken. Terbell was then called on behalf of the defendant, and the following occurred:

"The Court: What do you propose to show by this witness? Mr. McNamara: I propose to show what this stock brought at private sale immediately after the auction sale that has been testified to. The Court: I will exclude the testimony, and make the same ruling as my last. You may have your exception."

I think the exclusion of this testimony was error. The object of all of the testimony on this branch of the case was to furnish the jury with proof as to the market value of this property. An actual bona fide sale, whether public or private, is one method of ascertaining that value. It affords more enlightenment to the jury than the opinions of experts. In Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032, the action was for the conversion of a stock of goods in a store in Plattsburg, N. Y., which were subsequently to the alleged conversion taken to Syracuse and Utica, and about a year later sold at private sale. On the trial evidence offered to show what the goods sold for at this sale, and that the price received was the best obtainable, was excluded. The court of appeals, in reversing the judgment, solely on the ground that the evidence excluded was competent, after declaring the general rule that the market price of the property at the place of the conversion is usually the true measure of value, add at page 196, 135 N. Y., and page 1033, 31 N. E.:

"The market price of personal property is nothing but the general or ordinary price for which the property may be bought and sold. There is no particular number of sales necessary to be proved before such price can be said to be established. It seems plain, however, that proof of the price obtained at an actual sale made bona fide, and not a sale which was in any way forced, would tend in the direction of proving or establishing a market price, and hence would be some evidence of the value of the property sold. It might not, and, indeed, it is not claimed to, be conclusive, but it seems to be competent upon that question. * * * In the ordinary case of purchase and sale of property, the fact that the purchaser and seller have met and agreed upon a price, and actually bought and sold the property at that price, ought to be, in the nature of things, some evidence of the value of that property which has thus changed hands in a bona fide transaction."

And again, at pages 197 and 200, 135 N. Y., and pages 1034, 1035, 31 N. E.:

"But the reason for the admissibility of this kind of evidence does not and cannot rest upon the fact that the sale was by auction, but upon the fact that there was an actual sale—a real transaction—between the buyer and seller. The price given and obtained upon such actual occurrence is naturally regarded as some evidence of the value of the thing bought and sold. There is no particular force in the fact that the sale was by auction, which

tends to prove the value of the thing sold any more than any bona fide sale in private. * * * Enough has been said, as it seems to me, to show that the price which an article brings upon a sale is some evidence of its value, and that such sale need not be at auction."

That case is identical with the present one, and, as I believe, has since been adhered to by the court of appeals. In re Johnston, 144 N. Y. 563, 39 N. E. 643, where the only evidence of the value of the leasehold estate was the price paid for a fractional portion thereof at private sale. It has repeatedly been held that the cost price of an article is some evidence tending to show its market value. Wells v. Kelsey, 37 N. Y. 143; Hawver v. Bell, 141 N. Y. 140, 36 N. E. 6; Welling v. Manufacturing Co., 15 App. Div. 116, 44 N. Y. Supp. 374; Jones v. Morgan, 90 N. Y. 4, 43 Am. Rep. 131; Hoffman v. Conner, 76 N. Y. 121–124. If what personal property cost when new is admissible as bearing upon its value upon a subsequent date (141 N. Y. 140, 36 N. E. 6, supra), a priori what was paid for it at an honest sale by third parties, about the time its market value is the subject of inquiry, ought to be some evidence of that value. The case of Latimer v. Burrows, 163 N. Y. 7, 57 N. E. 95, contains nothing in conflict with this rule. In that case the defaulting vendor sought to give evidence of the price for which he sold the property in question at a private sale. The court of appeals held this evidence should not have been received, because "it was, in effect, admitting in his favor proof of the plaintiff's own acts, to which he was an essential party." There is no dissent from, or criticism of, the case of Parmenter v. Fitzpatrick, but it is referred to approvingly. The rule adopted in Latimer v. Burrows is entirely consistent with the Parmenter Case; for the acts of the party himself were held inadmissible to prove and pare down the value of the property which he acquired by his wrongdoing, because they were done in his own favor. The doctrine which excludes the declarations or statements of the party for his own benefit is equally applicable to his acts. That is all the court decided in 163 N. Y., as it said at page 9 (57 N. E. 96): "It is clear that a party may not prove his self-serving declarations in his own behalf. Upon the same principle, we think he cannot prove his self-serving acts in his own favor." The marked distinction between that case and the present one is that in the present case the sale which the appellant attempted to prove was made by a disinterested party instead of by the person affected by it. The value of the property was the sole question submitted to the jury. The value given by the appellant's witnesses was not accepted, so that this excluded testimony was material.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

RUMSEY, J., concurs.