standing the lack of a decree of any state court. An accounting in a state court and the rendering of a decree therein is not a prerequisite to an action for an accounting against the surety. An accounting could be had in the present action if the complaint were framed upon that theory. It is framed, however, upon the theory that the decree of the bankruptcy court upon the voluntary accounting of the assignee therein is binding and conclusive upon this defendant as surety. The cause of action set forth is upon the decree alone, and is in effect a suit upon a judgment.

When the defendant gave its undertaking to answer for the acts of the assignee, I think all it agreed to do, so far as being conclusively bound by decrees, was to abide without question any decree made by any state court having jurisdiction over assignments. These courts were the Supreme Court and the various County Courts of the state. Assignments for the benefit of creditors were and are regulated by state statutes. I do not think it can be said that the defendant by giving its undertaking into which these statutes must be fairly read consented that any court, foreign or federal, into which the assignee chose to go and account might make a binding and conclusive decree against it as surety. It is true the functions of the assignee ceased when bankruptcy was adjudged; but the assignment was good when made. The fact of its being superseded by the bankruptcy proceedings did not throw the assignment into the bankruptcy court. Nor did the assignment get into that court because the property in the hands of the assignee passed to the bankruptcy trustee. For the purposes of a binding accounting upon the surety, the assignment was still in the state court. The real contention in Adams v. Hyams (C. C.) 8 Fed. 417, 19 Blatchf. 487, seems to have been that an accounting and decree in a state court was a prerequisite to the maintaining of an action against the surety. To the holding that it was not I agree. To the further discussion and holding that the bankruptcy court could make a decree conclusive and binding upon the surety I do not agree. Nor was the judgment obtained against the assignee in the New Jersey court binding upon the defendant. The plaintiff cannot sue the surety upon that judgment as a binding or conclusive adjudication of the amount due.

For these reasons, I think the demurrer to the complaint was properly sustained, and should be affirmed.

SCOTT, J., concurs.

---

PHENIX NAT. BANK v. WATERBURY et al.

(Supreme Court, Appellate Division, First Department. January 17, 1908.)

1. SALES—ACTION FOR PRICE—PLEADING—ISSUES AND VARIANCE.

Where defendants agreed to purchase from plaintiff certain property on a certain day, or such earlier day as they might designate, and to pay therefor a certain sum, with interest to the day of purchase, this is all plaintiff in an action for the price need plead, though there is a subsequent provision by which the amount to be paid may be reduced if certain things happen; but the happening of those things is a matter of defense to be pleaded by defendants, so that a variance does not arise on the introduction of the contract showing such provision.

**2. BANKRUPTCY—PROVABLE CLAIMS—FIXED LIABILITY.**

The claim against bankrupts, under a contract by which they agreed to purchase from plaintiff corporate stock on a certain day or such earlier day as they might designate, and to pay therefor a certain sum, with interest to the day of purchase, the amount to be paid to be reduced by any sum that, pending consummation of the sale, should be received by plaintiff as dividend on the stock, or as cash for retirement or redemption of the stock, was fixed, as regards the amount which would become payable, on the day of the filing of the petition in bankruptcy, which was prior to the day for the purchase, so as to make the claim, as far as that element is concerned, one provable against the estate under Bankr. Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447], no dividend having been paid, and the corporation having been dissolved, so that it could never declare a dividend or redeem its stock.

**3. SAME—DEBT "ABSOLUTELY OWING."**

A contract by which defendants "agree to purchase" stock on May 1st, on on any earlier day at their option, and pay therefor a certain sum, with interest to the day of purchase, being an agreement for a sale and purchase in the future, does not create a debt "absolutely owing," though not then payable, at the time of the filing of the petition in bankruptcy, against defendants, which was prior to May 1st, they not having exercised the option to purchase earlier, so that such claim was not provable under Bankr. Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447], and was therefore not discharged by the discharge in bankruptcy.

McLaughlin, J., dissenting.

Action by the Phenix National Bank against James M. Waterbury and others. Defendants move for a new trial on exceptions ordered to be heard in the first instance at the Appellate Division. Exceptions overruled, and judgment directed for plaintiff.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Charles F. Brown, for the motion.
William N. Cohen, opposed.

SCOTT, J. Plaintiff had a verdict by direction, with exceptions ordered to be heard in the first instance at the Appellate Division. The complaint alleged that on or about July 21, 1904, the plaintiff and defendants entered into an agreement in writing and under seal, whereby the defendants jointly and severally promised and agreed to purchase from plaintiff on May 1, 1900, or on such earlier day as defendants might elect, 250 shares of the preferred capital stock of the Waterbury & Marshall Company, a corporation, and to pay therefor the sum of $25,000, with interest at 6 per cent. per annum from April 2, 1894, to the date of the purchase. By way of defense, the defendants set up that they had filed a joint and several petition in bankruptcy on March 6, 1899, and that they had been discharged in bankruptcy on May 7 and 8, 1900. When the written contract came to be offered in evidence, it was objected to by defendants, on the ground that it was not the contract set forth in the complaint, and the exception to its admission raises the first point upon which a reversal is sought.

The contract provides in its first clause, as alleged in the complaint, that the defendants "agree to purchase from the party of the second part [plaintiff] on the first day of May, 1900, or on any earlier date at their [defendants'] option, 250 shares of the Waterbury & Marshall

Company, * * * and to pay therefor the sum of $25,000 and interest on said sum at the rate of six percentum per annum from the second day of April, 1894, to the said first day of May, 1900, or to such earlier date as the parties of the first part [defendants] may elect to purchase said stock." The second paragraph of the contract contains a reciprocal agreement on the part of the plaintiff to sell and deliver to defendants 250 shares of stock at the price agreed upon on the 1st day of May, 1900, or such earlier day as the defendants shall elect to purchase the same. Other clauses of the contract provided that the amount to be paid for the stock by the defendants should be reduced by any sum that, pending the consummation of the sale, should be received by plaintiff as dividend upon the stock, or as cash for retirement or redemption of the stock, or as dividends upon any stock or scrip dividends that might be declared and delivered to plaintiff, such stock or script received as dividend to be included in the purchase and sale without further compensation. The objection made to the reception of this contract was that it is materially variant from that set forth in the complaint, and that the pleader should have set up the contract in its entirety, stating the provisions under which the amount to be paid might have been reduced below $25,000, and then stating that none of these things had happened. In our opinion the objection was not well taken. The contract is in the first instance absolute for the payment of $25,000 and interest. The insertion of the clause under which the amount to be paid might be reduced did not create a condition, but was rather in the nature of a proviso. If the circumstances had arisen, it was for the defendants to so plead by way of defense; and it was not necessary for plaintiff to anticipate and negative this defense. The more important and serious question is as to whether or not defendants' obligation was discharged in bankruptcy. It was admitted that plaintiff had due notice of the bankruptcy proceeding, and made no effort to prove a claim against defendants. The question is whether or not the plaintiff's claim was provable in bankruptcy as a debt. If it was, it was discharged. If it was not provable, it was not discharged. Section 63a of the bankruptcy act, defining the debts which may be proved and allowed against a bankrupt's estate, includes "a fixed liability, as evidenced by a judgment or instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not."

The claim against these defendants was evidenced by a written instrument, and the amount which would become payable was fixed and determinable, because the corporation of Waterbury & Marshall Company had never paid a dividend, and had been dissolved by operation of the New Jersey tax law and the proclamation of the Governor of that state, so that it could never declare a dividend or redeem its stock. The question is whether the sum was "absolutely owing at the time of the filing of the petition." An examination of the contract shows that it is essentially an agreement for a sale and purchase in the future, and, as we construe it, cannot be regarded as in any sense a present sale with a postponement of payment. The language is that the defendants "agree to purchase on the first day of May, 1900." Until that time the whole title remained in plaintiff. Before May 1, 1900,

the plaintiff could not call upon defendants to take the stock, and consequently could not put defendants under a present obligation to pay the purchase price. In other words, the plaintiff could not prior to that date put the defendants in the position of debtors to it. The fact that the amount to be paid when the agreement to purchase should be consummated was to be the sum of $25,000, with interest from a stated date, does not characterize the transaction as one creating a debt presently owing, but payable in the future. That method of fixing the amount to be paid resulted from the option given by the contract to defendants, not to plaintiff, to complete the purchase on an earlier date than May 1, 1900, and was only another way of saying that the purchase price should be a sum equivalent to $25,000, with interest from April 2, 1894, to the date of purchase. We are unable to find in the contract any words indicating that the transaction amounted to a present sale of the stock, with the date of payment deferred. If, for instance, the plaintiff had sold the stock to a third person, before the time came for the completion of the purchase, it is difficult to see how plaintiff could have been sued in conversion, or, if on the date of the filing of the petition in bankruptcy the defendants had been seeking to reduce the assessment of their personal property for the purposes of taxation, they would not have been permitted to deduct the agreed purchase price of the stock as a debt which they then owed. The provability of a debt under the present bankrupt law is specifically referred to the date of filing the petition. If it is owing, then it may be proved. If it becomes due after the filing of the petition, even if before the adjudication, it may not be proved, and will not be discharged. Herein the present bankruptcy act differs from its predecessors. Both the act of 1841 and that of 1867, besides providing for the proving of debts presently owing, but not presently payable, expressly provided that contingent debts and liabilities might be proven, and payment thereon made out of the bankrupt's assets. Act March 2, 1867, c. 176, § 19, 14 Stat. 525; Act Aug. 19, 1841, c. 9, § 5, 5 Stat. 444. Both the act of 1867 and that of 1841 carefully observed and preserved the distinction between contingent liabilities that were not due and might never become due and debts which were owing but not payable until a future day. The present act has provided that the latter may be proved, but has made no provision for the former. In regard to other omissions in the present act of provisions contained in the former acts, the rule has obtained that the omissions must be deemed to have been deliberate and intentional, and should not be supplied by construction. Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. In at least one case this omission has been held to forbid the proof of contingent liabilities. In re Marks, 6 Am. Bankr. Rep. 641. And, even if we were permitted to make the attempt to read into the act by construction that which the Congress had omitted, we should find ourselves confronted with the positive declaration that, in order to be provable, a debt must be "absolutely owing." Clearly that which is only contingent cannot be said to be "absolutely" owing. The defendants' liability is not of that class of claims referred to in subdivision 4 of rule 21 of the United States Supreme Court Rules in Bankruptcy

(18 Sup. Ct. vii), which is limited to persons who may be contingently liable for some debt or default of the bankrupt. That the defendants' liability under their contract was contingent cannot, we think, be disputed. Such liability was not to become absolute until May 1, 1900, long after the petition in bankruptcy was filed. Up to that time the defendants owed plaintiff nothing, and there was nothing which plaintiff had a right to demand of defendants. Before that time many things might happen, in consequence of which no debt would become owing from defendants to plaintiff. In my view, therefore, whatever obligation the contract imposed upon defendants was merely contingent when the petition in bankruptcy was filed, was not provable in that proceeding, and was not discharged as a result of that proceeding. It is perhaps a little singular that in the mass of litigation which has arisen under the bankruptcy act no case exactly resembling the present is to be found in the books. Decisions are, however, to be found in somewhat analogous cases. Although the Supreme Court of the United States has not yet passed upon the question, the weight of authority appears to be in favor of the proposition that the liability of an endorser upon a note not yet due, is contingent, and not provable in bankruptcy; and it is well established that a claim for future rent under a lease may not be proved and is not released by the discharge. Witthaus v. Zimmermann, 91 App. Div. 202, 86 N. Y. Supp. 315. The subject was somewhat discussed in Re Pettingill (D. C.) 137 Fed. 143, to which both parties refer upon their briefs. In that case Pettingill had given to various creditors preferred stock of a patent medicine company. To some he guaranteed the payment of dividends, and to some he guaranteed the redemption of the stock at a fixed time subsequent to the bankruptcy, or agreed to purchase at a time also subsequent to the bankruptcy. Unlike the present plaintiff, Pettingill's creditors attempted to prove claims against his estate, thus asserting their provability. The circuit judge (Lowell) discusses at length the provisions of the bankruptcy act, and cites a large number of decisions as to what claims can and what cannot be proven, and finally deduces from them all the following rule:

"If the bankrupt at the time of bankruptcy, by disenabling himself from performing the contract in question and by repudiating its obligations, could give the proving creditors the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditors can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation."

He disallowed the claim for guaranteed future dividends. As to the agreements to redeem the stock at a future time, he wrote as follows:

"The contract to redeem the stock three years after the date of issue may fairly be construed as a contract to purchase the stock at par at the time specified. As to the provability of the claim arising from the last mentioned contract, the question presented is this: Can a claim for breach of the bankrupt's contract to buy goods at a fixed date after bankruptcy be proved in the bankruptcy proceedings? If the creditor so elects, and if the trustee does not elect to keep the contract alive, I am of opinion that proof is possible by analogy of In re Swift, 112 Fed. 315, 50 C. C. A. 264, Hochser v. Delatour, El. & Bl. 678, and Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953."

It will be observed that both in the general rule, and in its application to the particular case, Judge Lowell treats as necessary to provability the repudiation of the contract by the bankrupt, and the election by the creditor to accept the repudiation as an anticipatory breach and sue, or claim in bankruptcy for damages for such breach. Each of the cases cited in support of the foregoing ruling was one where the creditor had elected to accept repudiation as a breach and to sue for damages before the time fixed for the fulfillment of the contract. In the present case there was no repudiation of the contract by defendants, unless bankruptcy itself is to be treated as equivalent to repudiation, and there certainly was no election on the part of plaintiff to treat the contract as broken in anticipation of the date of fulfillment, for it made no effort to prove a claim for damages in the bankruptcy proceeding. If the contract is to be treated as broken by anticipation and legally repudiated by reason of defendants' bankruptcy, two courses were open to plaintiff as to which it had an untrammeled election. It might either accept the repudiation as an anticipatory breach and at once assert and prove its claim, not for the purchase price as such, but for damages for the breach, or it might ignore the repudiation, wait for the date fixed for the fulfillment of the contract, and then tender the stock and sue for the purchase price. It is only where it adopts the first course that the ruling in Re Pettingill has any application, for that ruling expressly rests upon the election of the creditor to treat the contract as broken, and to seek to prove his damages in the bankruptcy proceeding. It seems to be indisputable that a contract to purchase personal property at a future time does not of itself create a present indebtedness for the agreed purchase price, and that the only cases in which a claim may be proved in bankruptcy by the vendor are those in which the parties have indicated by their acts an intention to treat the contract as broken by anticipation. In that case, however, the claim would not be for the purchase price as such, but for damages for the anticipatory breach. The mere fact that the prospective purchaser has become a bankrupt by no means necessarily implies that he may not be able to comply with the contract, and complete the purchase when the appointed time arrives. Many men by good fortune or unusual ability have rapidly risen to affluence after having been freed of their debts in bankruptcy, and it might also easily happen that the value of the stock to be sold would so increase in value between the date of the adjudication in bankruptcy and the date for the completion of the purchase that the purchaser would have no difficulty in procuring money wherewith to comply with the contract. The mere fact of bankruptcy did not constitute a breach of the contract, and the vendor, plaintiff herein, did not elect to treat it as broken and filed no claim.

The question as to when a debt is created under a contract of sale to be fulfilled in the future came before the Supreme Court of the United States in Ames v. Moir, 138 U. S. 306, 11 Sup. Ct. 311, 34 L. Ed. 951. It arose upon what is sometimes called a "put and call" contract. The parties entered into a written agreement on June 9, 1870, wherein Ames agreed as follows:

"I have this day bought of Robert Moir & Co. 100 barrels high wines (iron-bound) at $1.07 per proof gallon. The conditions of sale are as follows: The buyer can call from July 1st to 20th of same month by giving three days notice, and if not called for by the 20th of July the seller has the privilege of delivering up to the end of July by giving three days notice, to be delivered in 50 barrel lots. To insure the fulfillment of this contract a margin of $300 will be put up by both parties."

It is observable that this contract speaks of the purchase in the present tense, using the words, "I have this day bought," while in the contract involved in the present action the future tense is used, the defendant agreeing "to purchase on the first day of May, 1900." Ames, by a fraudulent device, having called for the high wines, obtained possession of them and immediately shipped them, attaching drafts to the bills of lading, upon which he collected the value of the spirits. Moir & Co. were unable to replevy the high wines because the banks upon whom the drafts were drawn and who had paid them were held to be pledgees in good faith. Consequently Moir & Co. were driven to their action against Ames. He pleaded a discharge in bankruptcy obtained on September 13, 1872, and the question thus presented was considered by the Supreme Court. If the debt for which Moir & Co. were suing was one which was provable in bankruptcy, it was discharged; if not provable, it was not discharged. Whether or not it was provable depended upon whether or not it was created by the purchase and sale agreement of June 9, 1870, or by the fraud, the argument in behalf of Ames being that the debt was created when that contract was executed; that that contract was free from fraud, and consequently that the debt was not created by any fraud on the part of the bankrupt, and was provable in bankruptcy and discharged by the decree in that proceeding. It thus became essential to determine whether or not the contract of June 9, 1870, providing for a purchase in the future, created a present debt. Upon the subject the court said:

"The writing itself did not in itself create a debt within the meaning of the bankruptcy act. It could not become effective as an instrument creating a debt in favor of plaintiffs until, pursuant to a call by defendant prior to July 20th, they delivered or offered to deliver to him the high wines he agreed to take at the price stipulated, or—the defendant failing to make a call for them within the time limited for his doing so—until the high wines were delivered, or tendered to him by the plaintiffs after the 20th, and before the end of the month of July. When the plaintiffs delivered, or offered to deliver the high wines at the defendants' place of business on the 18th of July, in fulfillment of the agreement of June 9th, and defendant failed to pay for them, then, and not before, was a debt created within the meaning of the bankruptcy act."

This language, and the reasoning leading up to it, appear to fit the present case exactly. Not until May 1, 1900, could the plaintiff tender the stock to defendants, and demand payment of the purchase price. Until, under the terms of the contract for a purchase, there arose and was exercised a right on the part of plaintiffs to deliver the stock, or a right upon the part of defendants to demand it, no indebtedness in our opinion arose from the defendants to plaintiff. No such demand was made by either party prior to the filing of the petition in bankruptcy, and in consequence there was no debt from defendants to plain-

tiff provable in bankruptcy and discharged by the discharge to defendants.

The exceptions should be overruled and judgment directed for the plaintiff, with costs.

PATTERSON, P. J., and HOUGHTON and LAMBERT, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to agree with the other members of the court that the exceptions should be overruled and judgment directed for the plaintiff.

The defendants by their contract agreed to pay the plaintiff on or before the 1st of May, 1900, the sum of $25,000, and interest thereon from the 2d of April, 1894, as the purchase price of 250 shares of Waterbury & Marshall stock. There are thus present, as it seems to me, in this agreement all the elements constituting a provable debt under section 63a of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]). The amount to be paid is $25,000 and interest. The debt is evidenced by a written instrument. It was absolutely owing at the time the petition in bankruptcy was filed, though not then payable. The amount to be paid was susceptible of accurate determination, because all that had to be done was to add the accrued interest to the principal sum. The fact that the defendants had until May 1, 1900, to perform their contract to purchase the stock does not alter the character of the debt as a provable one, because they had absolutely promised to pay this sum, with interest. It was a fixed liability, and as it seems to me absolutely owing at the time the petition was filed, and therefore provable.

Nor does the fact that the plaintiff did not see fit to exercise its right to prove its debt in the bankruptcy proceeding affect the question. The act does not give the creditor an option. If the debt is provable, and the debtor has notice of the proceeding (which it is conceded the plaintiff here had), then the debt, whether proved or not, is discharged. Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147. When the defendants filed their petition in bankruptcy, the plaintiff had a right to treat that act as a breach of the contract and to prove its claim against the bankrupts. In re Silverman (D. C.) 101 Fed. 219; In re Swift, 112 Fed. 315, 50 C. C. A. 264; In re Stern, 116 Fed. 604, 54 C. C. A. 60; In re Pettingill Co. (D. C.) 137 Fed. 143; Matter of Buffalo Mirror & Beveling Co., 15 Am. Bankr. Rep. 122. The case at bar is clearly distinguishable from Ames v. Moir, 138 U. S. 306, 11 Sup. Ct. 311, 34 L. Ed. 951. There the contract had been completely executed before the commencement of the bankruptcy proceedings, and the sole question before the court, as I read the opinion, was whether the debt came into existence by virtue of the contract itself or by the delivery of the goods. The contract had apparently been made in good faith, but possession of the goods was fraudulently obtained, and the court held that the debt was created not by the contract, but by fraud, and for that reason was not discharged by the subsequent adjudication in bankruptcy. Here the defendants' promise to pay was an absolute, and not a contingent, one. They absolutely promised to pay to the

plaintiff on the 1st of May, 1900, or at any time prior thereto that they saw fit, "the sum of twenty-five thousand (25,000) dollars and interest on said sum at the rate of six per cent. per annum" from a date specified. In no view can the liability of the defendants to pay the amount which they agreed to be said to be as contingent as was the liability considered by this court in Morrison v. Vaughan, 119 App. Div. 184, 104 N. Y. Supp. 169. There one Hoagland had engaged plaintiff's firm to finish the stone work on certain houses for the sum of $2,000, to be paid in two installments of $1,000 each, at certain stages of the work. The contract was made on the 3d of July, 1899, and on the same day the defendant guaranteed its performance by Hoagland and the prompt payment of the money to become due. The first payment became due on the 13th of January, 1900, and was not paid. Defendant on the 4th of November, 1899, filed a petition in bankruptcy, and was discharged on the 7th of February, 1900. Plaintiff had knowledge of the bankruptcy proceedings, but in January, 1905, brought an action to recover upon the guaranty. This court held, reversing the judgment of the court below, that the claim was provable in the bankruptcy proceeding, and for that reason the action could not be maintained. There, at the time the petition was filed, defendant's obligation had not matured. He had simply guaranteed the payment of a certain sum which had not then become due. Here the bankrupts might at any time intermediate the making of the contract and the filing of their petition in bankruptcy have taken the stock. By their contract they had agreed to pay a specified sum on or before a specified date, together with interest thereon. To say that such claim could not have been proved in the bankruptcy proceeding is to destroy, in a large measure, as it seems to me, the purposes sought to be accomplished by the bankruptcy act.

I am of the opinion that the exceptions should be sustained and a new trial ordered, with costs to defendants to abide event.