## WHITWELL v. WRIGHT et al.

*(Supreme Court, Appellate Division, Fourth Department. January 12, 1910.)*

1. BANKRUPTCY (§ 316*)—"FIXED LIABILITY."

 The bankruptcy act (Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]) in defining the provable debts against the estate of a bankrupt provides: "A fixed liability as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him." *Held*, that where a note was matured at the time of the filing of the petition, and there was presentation, demand of payment, and protest, the liability of an indorser thereon was a fixed one within the meaning of such section.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

2. BANKRUPTCY (§ 306*)—DEFECTS, AMENDMENTS, AND CORRECTIONS—SUPPLYING OMISSIONS.

 In an action by a trustee in bankruptcy to set aside as a preference a conveyance by the bankrupt, where the sufficiency of a certified copy of the petition and the adjudication of the federal court to establish the bankrupt's insolvency was questioned, the Appellate Court had power to require the submission as part of the record on appeal of certified copies of the order of reference to a special master of the minutes on the reference, the petition and orders permitting creditors to intervene, the answer of the bankrupt, the report of the special master, and the order confirming the same and directing judgment.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 306.*]

3. BANKRUPTCY (§ 100*)—RECOVERY OF PREFERENCE—INSOLVENCY—EVIDENCE.

 A judgment of the federal court confirming the report in bankruptcy proceedings of a special master finding the alleged bankrupt insolvent, no appeal being taken therefrom or from orders permitting creditors to intervene, conclusively established the insolvency of the bankrupt in an action to set aside as a preference a conveyance by him.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 100.*]

4. BANKRUPTCY (§ 166*)—PREFERENCES—"REASONABLE GROUND."

 Under the national bankruptcy act, what constitutes "reasonable ground" that a preference is intended by the bankrupt must depend on facts and circumstances.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 256; Dec. Dig. § 166.*]

5. BANKRUPTCY (§ 303*)—PREFERENCES—ACTION TO RECOVER—SUFFICIENCY OF EVIDENCE.

 In an action by a trustee in bankruptcy to set aside as a preference a conveyance by the bankrupt, evidence *held* sufficient to show that the conveyance was intended as a preference.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

Appeal from Equity Term, Ontario County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Francis W. Whitwell, as trustee in bankruptcy of Charles C. Gates, against Frank N. Wright and others. From the judgment, defendants appeal. Affirmed.

For prior report, see 115 N. Y. Supp. 48.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George L. Bachman, for appellants.

Lansing G. Hoskins, for respondent.

SPRING, J. The action is brought by the plaintiff as trustee in bankruptcy of Charles C. Gates, a bankrupt, in pursuance of section 60 of the national bankruptcy act, to set aside a conveyance of real estate made by said Gates and wife to the defendant Frank N. Wright. On October 9, 1906, the defendant Gates and his wife executed a conveyance of a farm owned by him in the county of Ontario to the defendant Frank N. Wright, who was his brother-in-law and who resided in the state of Minnesota, which deed was recorded on the 12th day of that month. Wright was a creditor of Gates to the amount of about $8,000, and the consideration for the conveyance of the farm was the payment of these obligations, which were surrendered and extinguished at that time; and it is also claimed by the defendants that Wright paid to Gates in cash, in addition to the cancellation of the indebtedness referred to, about the sum of $2,000.

About the 1st of February, and within four months after the delivery of said conveyance, the First National Bank of Geneva and two other creditors of the defendant Gates executed and caused to be filed with the clerk of the District Court for the Western District of New York their petition in involuntary bankruptcy proceedings against the defendant Charles C. Gates. An answer was interposed to said petition, and on the 21st day of March, 1908, said District Court declared and adjudged said Gates a bankrupt. The sole ground upon which insolvency was charged in said petition was the conveyance made by said Gates to said defendant Wright, and which, it is claimed, was for the purpose of giving a preference to said Wright over the other creditors of the alleged bankrupt, and that the said grantee had reasonable cause to believe that a preferential transfer was intended by such conveyance.

Section 60a of the national bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) provides:

"A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, * * * made a transfer of any of his property; and the effect of * * * such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Subdivision b provides:

"If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby * * * shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property, or its value, from such person."

The plaintiff, in order to bring himself within the provisions of this section, introduced in evidence a certified copy of the petition in the

involuntary bankruptcy proceeding and the final adjudication of the federal court, and then gave proof tending to bring the case within subdivision "b" of section 60 above quoted.

It is the claim of the appellants that the petition did not allege the facts essential to give the court jurisdiction. As already stated, it was made by three creditors of Gates, and alleged that together their claims against the alleged bankrupt exceeded $500, and that the aggregate of his liabilities was more than $1,000. Section 59b, § 4, subd. b, National Bankruptcy Act. It appears from the petition that the First National Bank of Geneva, one of the petitioners, held a promissory note of $1,500 executed by the Torrey Park Preserving Company, and which was indorsed by the defendant Gates, and which bore date October 23, 1906, and by its terms due in three months thereafter. The presentation of said note for payment, demand of payment, and protest are all duly alleged in said petition. Said note would therefore accrue on the 23d day of January, 1906, and was a matured obligation at the time of the execution of said petition.

The national bankruptcy act of 1898 in section 63a, in defining the provable debts against the estate of a bankrupt, provides as follows:

"A fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not."

This provision differs from the provisions contained in former bankruptcy acts, in that it requires a fixed liability absolutely owing at the time of the filing of the petition. In former acts contingent liabilities, whether matured or unmatured, could also be proved against the bankrupt. In construing this provision it has been held that unmatured obligations for which the alleged bankrupt is only contingently liable cannot be proven. Phenix National Bank v. Waterbury et al., 123 App. Div. 453, 108 N. Y. Supp. 391; Pirie v. C. T. & T. Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171.

It is the claim of the appellant that the liabilities of the bank against Gates, and which are set out in the petition, to the amount of over $6,000, were claims for which he was contingently liable and had not matured at the time the petition was filed. This is true as to all of the obligations, except the one already adverted to. The liability of the indorser had become fixed when the petition was filed and the sum of $1,500 was absolutely owing upon his contract of indorsement to the plaintiff. An action could have been maintained against Gates at once to recover the full amount of $1,500. It is unimportant as to the other obligations set forth in the petition owing to the bank for the amount of $1,500 is sufficient to give the court jurisdiction. The other two valid claims are set forth due to the other two petitioning creditors, so that I think all the essential jurisdictional facts are contained in the petition.

Upon the trial, the plaintiff, in order to establish the insolvency of Gates, offered in evidence a certified copy of the petition and adjudication of the federal court in the bankruptcy proceeding. The defendants' counsel objected to the reception of these two documents on the ground that they were incompetent, assigning no other ground of

objection. They were received in evidence, and constitute the only proof of insolvency. When certain evidence was offered on behalf of the defendants bearing upon this question, the court remarked:

"You may assume that in this case, unless the adjudication in bankruptcy settles the question of insolvency at the time this deed was made, that there is no other proof sufficient from which it can be found that there was any insolvency at that time."

And again:

"I understand the plaintiff's counsel to concede that he cannot succeed in this action unless the adjudication in bankruptcy is conclusive evidence that the grantor, Gates, in that deed, was insolvent on the day the deed was made. Mr. Hoskins: That is right."

The counsel for the appellants contends that the petition and adjudication do not establish the insolvency of Gates, and he further claims that the judgment roll should have been received in evidence. It appears from the recitals in the adjudication that an answer was filed, that the matter was referred to a master in chancery by whom a report was made finding that Gates should be adjudged a bankrupt, and that said report was confirmed.

I doubt whether the general objection interposed to the admissibility of these documents in evidence was sufficient to raise the question. However, it is important that all the papers constituting the judgment roll in the proceeding should be received in evidence. The attorneys were therefore directed to submit as part of the record on appeal certified copies of each of these papers. In compliance with this suggestion, we have been furnished with certified copies of the order of reference to a special master of the minutes taken on the reference, the petition and orders permitting creditors to intervene, the answer of the alleged bankrupt, the report of the special master, the order confirming the same, and directing judgment, with other papers.

The power of the court to require the production of these papers upon the review of the appeal is well sustained by authority. Stemmler v. Mayor, etc., of N. Y., 179 N. Y. 473, 482, 72 N. E. 581; People ex rel. Hummel v. Reardon, 186 N. Y. 164, 176, 78 N. E. 860; Milliken v. Dotson, 117 App. Div. 527, 102 N. Y. Supp. 564; Dunham v. Townshend, 118 N. Y. 281, 23 N. E. 367; H. B. M. & F. R. Co., v. Town Board, 87 Hun, 276, 278, 33 N. Y. Supp. 808. I have examined the very careful report, which is also an opinion, of the special master, and which is devoted almost entirely to the jurisdictional question here raised. He considered minutely each of the claims set forth in the petition, and also the claims which were presented in pursuance of the order of the United States District Court, and reached the conclusion that the claims embodied in the petition were sufficient to confer jurisdiction, and, even if he was in error in that conclusion, the claims of the intervening creditors might properly be considered in support of the petition, and two of these he held to be valid. His report was confirmed, and judgment was entered. The precise answer here interposed was raised in that proceeding as the only litigated question and was passed upon, terminating in a final adjudication.

adjudging said Gates to be insolvent. That court was vested with jurisdiction of the subject-matter, and no appeal has been taken from the final judgment or the orders permitting the creditors to intervene. This judgment conclusively established the insolvency of the defendant Gates at the time the conveyance was made. De Graff v. Lang, 92 App. Div. 562, 87 N. Y. Supp. 78.

The other ground which it was incumbent for the plaintiff to establish was that the grantee, Wright, had reasonable ground to apprehend that a preferential transfer was intended by the conveyance to him. Of course, this proposition must depend upon a variety of circumstances for the two parties interested would naturally testify that no such purpose was intended. Wright, the grantee, was a brother-in-law of Gates, and had formerly resided near the city of Geneva. He had been West for several years and owned a farm in Ontario county, and occasionally came back to visit his relatives and look after his property in Ontario county. He was a stockholder in the Torrey Preserving Company, of which Gates was the manager and treasurer, and it was the failure of this company which probably caused the bankruptcy of Gates, as he was a very large creditor of this company, and it was only able to pay a small percentage on its liabilities. He came East in September, stopped a part of the time with Gates, sold his farm, and, as he claims, brought with him about $2,000 in cash and the notes amounting to about $7,000 against Gates and which had been running for many years. Gates asked him to buy his farm. He said he was anxious to buy a farm and inquired what he asked, and Gates said $10,000, and the sale was immediately made. The defendants claim that these notes, which were turned over to Gates, were destroyed, which may be natural enough, but nobody seems to have any record or any memorandum in regard to them. We have only the testimony of the interested parties as to the notes at all. At that time Wright remained in and about Geneva for several weeks, was with Gates, visited the preserving company, which was in financial distress, and yet never made any inquiries as to Gates' responsibility or as to the condition of the preserving company. During all this time he did not visit the farm which he was to purchase. It was leased to tenants who paid a rent of $1,200, and yet he did not notify them of his purchase, and, in fact, after the conveyance the rent was paid to Gates, and by him sent to Wright in Minnesota. It is not necessary, however, to enumerate all this evidence. Quite an amount of it was given, largely elicited from Gates and Wright themselves. What constitutes "reasonable ground" that a preference is intended must depend upon facts and circumstances. Crittenden v. Barton, 59 App. Div. 555, 69 N. Y. Supp. 559.

The trial court had an opportunity to see these witnesses, has reached a conclusion, and made a finding that Wright at the time of the transfer had "reasonable cause to believe that it was intended by said transfer to give him a preference," and that it did have that effect. The evidence shows that Gates can only pay a small percentage to his creditors, and, if the value of this farm is turned over to the receiver, there would be insufficient then to pay the creditors in full. The result

of the conveyance, if upheld, is that Wright receives payment in full of his indebtedness, while the other creditors receive but a small percentage. In cases of this kind we must start with the broad proposition that it is the purpose of the national bankruptcy act to maintain equality among the creditors so that all of the same class will receive the same percentage of payment. Pirie v. Chic. Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

## In re HUFF.

(Supreme Court, Appellate Division, Fourth Department. January 12, 1910.)

1. INTOXICATING LIQUORS (§ 248*)—LIQUOR TAX LAW—SEIZURE OF LIQUORS—WARRANT—COMPLAINT.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 368, 369; Dec. Dig. § 248.*]

2. INTOXICATING LIQUORS (§ 248*)—LIQUOR TAX LAW—SEIZURE OF LIQUOR—WARRANT—COMPLAINT.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 248.*]

3. INTOXICATING LIQUORS (§ 250*)—LIQUOR TAX LAW—SEIZURE OF LIQUORS—ORDER ON RETURN DAY.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 250.*]

4. INTOXICATING LIQUORS (§ 253*)—LIQUOR TAX LAWS—SEIZURE—APPEAL FROM INTERLOCUTORY ORDER.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes