GERTRUDE JONES, Respondent, *v.* WILLIAM R. MORGAN, Appellant.

Defendant owned a building in the city of New York, used and occupied as a storehouse. Under an agreement with plaintiff, who desired to store for safe-keeping certain household furniture, a space was allotted to her in said building, and defendant assured her that her goods would be safe, and would be guarded day and night. The allotted space was inclosed by wooden partitions with a door, upon which were two locks, the key of one of which was kept by plaintiff. When money was paid by plaintiff it was receipted for, generally as paid for storage. Most of the property was stolen by those in charge of the building. In an action to recover damages the court charged, in substance, that the contract was one of bailment, that defendant, if liable at all, was liable as a warehouseman, and bound to exercise ordinary care and prudence. *Held* no error.

*It seems* immaterial whether the contract was one of bailment, or of hiring the allotted room, as in either case defendant was bound to exercise ordinary care and prudence in guarding the goods.

As bearing upon the question of value, plaintiff was allowed to testify, under objection and exception, prices paid by her for some of the articles of furniture. She testified that she purchased them some six or seven years before they were left in store, and that she paid the market price, which she stated. She testified, also, as to the manner of use and condition of the property. *Held* no error; that the measure of damages was the value of the property at the time defendant failed to deliver on demand, with interest; that, as it was impracticable to prove its market value at that time, or to get a valuation from experts because of the loss of the property, it was the only way and so proper to get at the value by showing the cost, the condition it was in, and the depreciation from use.

*Beach* v. *R. & D. B. R. R. Co.* (37 N. Y. 457), distinguished.

Plaintiff, by the aid of detectives, and of legal proceedings, and by the expenditure of money, recovered a portion of her property. She was allowed to prove, under objection and exception, the expenses thus incurred. *Held* no error; that plaintiff was not bound to seek for her property, but upon defendant's failure to deliver, he became liable for the whole amount, and what she did to recover the property, so far as it was successful, was for his benefit, he being entitled to credit for that portion so recovered, but he could not claim the credit without allowing the expense incurred.

So also *held*, plaintiff was entitled to prove and to be allowed the expense of repairing some of the furniture which was recovered in a damaged condition.

(Argued June 21, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made April 1, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Mem. of decision below, 24 Hun, 372.)

This action was brought to recover damages for the loss of a quantity of household goods, which the plaintiff alleged she stored with the defendant, and which were lost through his negligence.

The plaintiff in April, 1875, stored a large and valuable quantity of household furniture and other property in a building owned by the defendant and known as number 12 Washington place. It was designed that the property should remain there while plaintiff and her husband remained in Europe, which it was contemplated might include a period of several years. They did, however, return in 1876, when the property was found in the same condition in which they had left it, and they went again to Europe in the summer of that year, returning finally in November, 1877. During their second absence most of the property deposited in the building was removed and feloniously misappropriated by the persons who had charge of it; and it was to recover the value of what had been so taken that the action in this case was brought. At the time when the property was placed in the building it had in fact been leased to a tenant named Griswold. But this circumstance does not appear to have been communicated either to the plaintiff or her husband. The latter went to the building, and a negotiation was opened with Griswold concerning the terms upon which the property might be stored; they did not agree, and Griswold referred him to the defendant. An interview took place between them in which the terms proposed by Griswold are stated to have been repeated to the defendant, accompanied with an application to reduce the price of the space so proposed to be furnished in which the goods should be stored. The interview resulted in no deduction, and plaintiff's husband was referred back by defendant to Griswold as the person who was in charge of the property. In conformity to this refer-

ence, further negotiations were carried on between Griswold and the plaintiff's husband, which resulted in the acceptance of the terms offered and the appropriation of a space, as aforesaid, in which the property was to be placed and stored. This space was afterward partitioned off with a board partition, and the property deposited in it. The entrance to it was by means of a door which was secured by two locks, one of which was put on by and remained subject to the control of plaintiff. The further material facts are stated in the opinion.

*Joseph R. Flanders* for appellant. Defendant had no connection with this storage business. He was simply landlord. (Taylor's L. & T., § 24, p. 20 [7th ed.] ; *Jackson* v. *Brownell*, 1 Johns. 267; *Tuttle* v. *Beebe*, 8 id. 152; *DeMott* v. *Hagerman*, id. 220; *Muzzy* v. *Whitney*, 10 id. 235; *Greenwood* v. *Brink*, 1 Hun, 227; *Ogden* v. *Astor*, 4 Sandf. 311; *Bendell* v. *Hettrick*, 35 Supr. Ct. 405; *Angell* v. *Cook*, 2 T. & C. 175; *Pattison* v. *Blanchard*, 5 N. Y. 191; *Heimstreet* v. *Howland*, 5 Denio, 68; *Gibson* v. *Stone*, 43 Barb. 285; *Burckle* v. *Eckhart*, 3 N. Y. 132.) If defendant had promised to keep janitors and night watchmen on the premises, and he had been the proprietor of the business, and it had been a case of bailment and he the bailee, such a promise would not have enlarged the obligation imposed by law. (*Coggs* v. *Bernard*, 1 Smith's L. C. 346 [6th Am. ed.]; 2 Blackst. Comm. 452; *Foster* v. *Essex Bk.*, 17 Mass. 501; *Schiffelin* v. *Harvey*, 6 Johns. 179; *Hyland* v. *Paul*, 33 Barb. 241; *Price* v. *Hartshorn*, 44 id. 667; *S. C.*, 44 N. Y. 94.) A bailee, simply as such, is not liable for goods stolen or embezzled by his storekeeper or servant. (*Schmidt* v. *Blood*, 9 Wend. 268; *Foote* v. *Storrs*, 2 Barb. 326.) No bailment existed in this case. (*Donsey* v. *Richardson*, 3 Ell. & Bl. 77; Eng. Com. L. R., Q. B. 143; *Holden* v. *Soulby*, 98 Eng. C. L. R. 254; *Farnworth* v. *Packwood*, 1 Starkie, 249.) The hiring of rooms and separate inclosures, for any or every purpose, in buildings of any or every kind, for the distinct and separate occupancy or use of the hirer, is a tenancy. (*Inman* v. *Stamp*, 1 Starkie, 12;

*Rickett* v. *Lullick*, 6 C. & P. 66; *Underwood* v. *Burrows*, 7 id. 26; *Eakin* v. *Brown*, 1 E. D. Smith, 36; *Browning* v. *Delesme*, 3 Sandf. Sup. Ct. 13; *Dyett* v. *Pendleton*, 8 Cow. 727; *Cohen* v. *Dupont*, 1 Sandf. Sup. Ct. 260; *Kerr* v. *Merchs'. Exch. Co.*, 3 Edw. Ch. 315; *Graves* v. *Berdon*, 29 Barb. 100; affirmed, 26 N. Y. 498; *Austin* v. *Field*, 7 Abb. Pr. [U. S.] 29; *Townsend* v. *Gilsey*, id. 59; *Johnson* v. *Dixon*, 1 Daly, 178.)

*Samuel Hand* for respondent. A warehouseman taking goods on storage for hire is answerable for their loss, unless he can show that the loss occurred under circumstances exonerating him from all blame, or that he exercised a degree of care in their safe-keeping to repel the conclusion that the loss occurred through his negligence or dishonesty. (*Aherent* v. *Squire et al.*, 1 Daly, 347.) The question of negligence is for the jury. (*Chenowith* v. *Dickinson*, 8 B. Monr. 156; *Clark* v. *Arnshaw*, 1 Row. 30; *Safe Deposit Co.* v. *Pollock*, 85 Penn. St. 391; Schouler's Bailments, § 104; *Patterson* v. *Syracuse Bk.*, 80 N. Y. 82; *Hays* v. *Miller*, 70 id. 112–117; Story on Bailments, § 440; Schouler's Bailments, 111.) The judge was right in holding, as matter of law, that the plaintiff's contract was one of storage or bailment of goods either with the defendant or Griswold. (*Wilson* v. *Martin*, 1 Denio, 604.) There was no error in admitting the plaintiff's evidence of the actual cost of the goods. (*McCormick* v. *Pa. R. R.*, 49 N. Y. 318; *Halsey* v. *Sinsebaugh*, 15 id. 485; *Dowden* v. *Pa. R. R. Co.*, 13 Blatchf. 402; *Howard* v. *McDonough*, 8 Daly, 368; *Dowdall* v. *Pa. R. R. Co.*, 13 Blatchf. 403; *Cliquot's Champagne*, 3 Wall. 115, 141; *Lush* v. *Druse*, 4 Wend. 315.)

EARL, J. The questions of fact litigated upon the trial of this action were finally settled by the verdict of the jury and the decision of the court at General Term, and they are not subject to further review here. Among the questions thus settled is the one relating to the person with whom the plaintiff contracted. There was some evidence, not very satisfactory,

but yet sufficient to warrant the verdict, that she contracted with the defendant. That evidence was reviewed and commented on sufficiently by DANIELS, J., in his opinion delivered in the court below, and it would serve no useful purpose to give it further attention at this time. I will, therefore, proceed at once to the examination of the questions of law presented for our consideration.

The plaintiff claims that her contract with the defendant was one for the storage of her goods in his storehouse, and that his responsibility to her was that of one who takes goods to be stored in a storehouse for hire. The claim of the defendant is that the plaintiff hired the room in which she placed her goods, and that the relation between him and her, if any existed, was that of landlord and tenant, with the responsibility on his part which such a relation implied.

The trial judge charged the jury that the contract of the plaintiff with the defendant, if they should find that it was made with him, was one of bailment, and that the defendant, if liable at all, was liable as a warehouseman, and bound to exercise ordinary care and diligence in keeping the goods; and to this portion of the charge the defendant excepted.

It is not absolutely essential to determine whether the contract between the plaintiff and the defendant was one of bailment of the goods or of hiring the room in which they were stored, because which ever it was the defendant was bound to exercise ordinary care and prudence in guarding them. Such a responsibility was imposed upon him by the very nature of the transaction. The plaintiff was seeking a safe place for the storage of her goods. The defendant had a storehouse in which the storage business was carried on, and he assured her that her goods would be safe therein, and that they would be under the guard of a watchman by night and a responsible or reliable man by day. The price for the space in the storehouse allotted to the plaintiff was fixed in reference to these circumstances. The parties could not have understood that the defendant was to take no care of the goods. The very nature of the contract and the relation between the parties

imposed upon the defendant the obligation of ordinary care and prudence in keeping the goods. It is like the case of one who hires a box contained in the safe of a safe-deposit company. He may keep the key, but the company, without special contract to that effect, would be held to at least ordinary care in keeping the deposit, and the duty of such care would arise from the nature of the business it was carrying on, and the obligation to discharge it would be implied from the relation between the parties.

But we are of opinion that the judge was right in holding that the contract was one of bailment. The building in which the goods were stored was a storehouse and the business therein carried on was the storage business. The business was advertised as such, and the plaintiff went to the storehouse to have her goods stored there. When she paid money on account of the space occupied by her in the building it was always paid for storage and receipted to her as such. It matters not that in some of the conversations between the parties the price charged was called rent. It was generally called the price of · storage, and by whatever name it was called it is clear that the parties always understood it to be the price or charge for storage.

It matters not that a space was assigned to the plaintiff for the storage of her goods and separated from the rest of the room in which it was by board partitions. That was by special arrangement between the parties, and the defendant accepted the goods in that way. They were in bulk in his storehouse under his charge and in his keeping just as they would have been if they had been placed in a large box or in locked-up boxes in the same room. It is a species of bailment like that existing in the case of the depositor in a safe-deposit company, who hires a box for his valuables and keeps the key; but as I have before stated, it is unnecessary to define the precise nature of the contract, or to give it a name. The defendant assumed the obligation of ordinary care and prudence in keeping the goods, and that is sufficient to sustain the charge of the judge.*

\*    \*    \*    \*    \*    \*    \*

\*The omitted portion of the opinion relates to matters not of any general interest.

Upon the trial of the action, the plaintiff testified as a witness in her own behalf, to the value of certain of the articles of furniture. She testified that she bought them in 1868 and 1869, and paid the market price for them, and what they then cost her. The defendant's counsel objected to the evidence of the purchase-price of the articles, on the ground that the time was too remote, and the judge overruled the objection. In this there was no error. The defendant was to be charged with the value of the articles at the time he failed to deliver them to the plaintiff upon her demand, and their fair value at that time, with interest, was the measure of plaintiff's recovery. If it was practicable to give evidence of their precise market value at that time, then such evidence should have been required. But this was second-hand furniture, having no real market value. The furniture was lost, and hence it could not be exhibited to experts for their valuation. It was incumbent then upon the plaintiff to make the best proof she could. She therefore gave proof showing when she purchased the furniture, what it then cost her in the market, how it had been used, and what its condition was, and then what the depreciation was upon furniture from the fact that it was old and had been used, and from all these facts it was for the jury to determine the value of the furniture at the time of the breach of defendant's contract. There seems to have been no other feasible way to ascertain the value. Within what range as to place and time witnesses shall be confined in their testimony to the value of personal property, when its value comes in question, must often depend upon the circumstances of the case and be in the discretion of the trial judge. When the property has a market value at the time and place, which can be proved by witnesses who can then and there speak of it, it must be proved by such witnesses. When there is no market value at the place, then its market value at some other place may be proved. If there is no market value at the time, then market value at some other time before or after may be proved. And if the property is of such a character as to have no market value, then other proof tending to show the value at the proper

time and place must of necessity be resorted to. Here the original cost of the property was proved, and the manner in which it had been used and its condition. Plaintiff's witnesses testified that the deterioration upon such furniture from a fair cost price would be twenty-five per cent, and defendant's witnesses testified that it would be from fifty to sixty per cent. Here were all the elements from which a jury could arrive, not with precise accuracy, but with sufficient accuracy for the purposes of justice, at what would be a fair compensation to the plaintiff for her loss.

Nothing in conflict with these views appears to have been decided in *Beach* v. *Raritan & Delaware Bay R. R. Co.* (37 N. Y. 457, 470). In that case the action was to recover the value of a barge, and it was said by WOODRUFF, J., to be erroneous to allow proof of the price paid for the barge six years before the time at which her value was to be estimated for the purpose of the trial. There does not appear to have been any difficulty to prove the market value of the barge at the time she was converted by the defendant, and it does not appear that there was any necessity to resort to the price paid. The learned judge said that "the testimony in ordinary cases to market value is confined to the time when the value is to be taken, or, in special circumstances, to a reasonable time before or after the day in question." What is a reasonable time in such a case must be determined by the trial judge in view of all the circumstances. Here there were special circumstances. This was not an ordinary case. The furniture had no market value, and the best, if not only, way to get at its value was to prove its cost in the market, and then the deterioration by age and use. In the case cited the judgment was not reversed for any error in the reception of evidence, but for an error in the charge of the judge.

The plaintiff in her complaint claimed compensation for the entire value of her furniture as for a total loss. By the aid of detectives, by legal proceedings, and the expenditure of money, she recovered some of the property, and she was allowed to prove, against the objection of the defendant, what

expenses she thus incurred.  She was not bound to seek for her property.  When the defendant failed, upon demand, to deliver it to her, he became liable for the whole of it.  What she did, therefore, to recover the property, so far as it was successful, was for his benefit and he was entitled to credit for the property thus recovered, less the expense of recovering it. He could not claim the credit without allowing the expense, and he cannot complain that, instead of being charged with the whole value of the property recovered, he was charged only with the expense of recovering it.  The same observations are applicable to the expense of repairing some of the furniture recovered in a damaged condition.

I have now examined the most important exceptions presented for our consideration.  I have not overlooked any of the other exceptions to which our attention was called.  It is sufficient to say of them that they point out no error prejudicial to the defendant.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.

---

THE JUSTICES OF THE COURT OF SPECIAL SESSIONS OF THE COUNTY OF NEW YORK, Appellants, *v.* THE PEOPLE, ex rel. HENRY HENDERSON, Respondent.

On the trial of an indictment for larceny, it appeared that the prisoner H., who was a saloon-keeper, received from R. a $20 gold piece out of which to take pay for twenty-five cents' worth of liquor; not being able to make change, H. was requested by R. to go out and get the change; he went out and lost the money gambling.  *Held*, that H. was properly convicted of the crime charged.

*The People, ex rel. Henderson,* v. *The Justices* (26 Hun, 537), reversed.
*Reg.* v. *Thomas* (9 C. & P. 741), disapproved.

(Argued June 22, 1882 ; decided October 10, 1882.)