THE STATE, DEFENDANT IN ERROR, v. PETER DUELKS AND CATHERINE DUELKS, PLAINTIFFS IN ERROR.

Submitted December 1, 1921—Decided April 13, 1922.

1. Section 54 of the Criminal Procedure act (*Comp. Stat.,* p. 1837) requires in cases of indictment for arson the delivery to the defendant at least two entire days before the trial of a copy of the indictment and a list of the jury; but does not require any list of the witnesses.
2. On the trial of an indictment for statutory arson involving the possible motive of collection of fraudulent insurance, a question as to whether at the time of writing the policy the agent of the insurance company had doubts as to whether there was property to the amount called for by the policy is irrelevant.
3. On the trial of an indictment for statutory arson a question to the chief of the fire department, who responded to the alarm of fire, as to the time it must have taken to make the apparent preparations for setting the fire, was properly overruled in the absence of anything to show that he was an expert on such questions.
4. A professional insurance adjuster and appraiser shown to be expert in the valuation of property damaged and destroyed by fire for the purpose of adjusting and settling insurance losses, *held* to be competent as an expert on the trial of an indictment for statutory arson where the value of the property was relevant to the issue.

5. In ascertaining judicially the value of personal property such as second-hand furniture, &c., the cost of such property, when purchased from a regular dealer in the ordinary course of trade, is competent to be proved as an element in the criterion of value; and this although the property had been purchased several years previously.

6. On a cross-examination intended to bring out the previous conviction of the witness of crime under section 1 of the Evidence act (*Comp. Stat.*, p. 2217), it is not erroneous to show that there was a sentence upon a plea of *non vult* and what that sentence was.

7. A witness, in response to certain questions objected to as erroneous, having stated in effect that he knew nothing about the matter, *held*, that the error, if any, in allowing the question was harmless.

8. On the trial of an indictment for violation of section 123 of the Crimes act, as amended (*Pamph. L.* 1919, p. 257), an instruction that if the defendants were guilty of setting fire to the house in question the conditions of the statute were fulfilled, is not erroneous where the whole theory of the case and of the charge was based upon an intentional burning of the house in question with an unlawful motive.

9. Instruction on the effect of evidence of good character as tending to raise a reasonable doubt and the effect thereof, *held*, not erroneous.

10. Upon the evidence submitted in the case, motions to instruct the jury to acquit and to charge that there was no evidence to justify a conviction, *held*, properly denied.

11. Section 123 of the Crimes act, as amended (*Pamph. L.* 1919, p. 257), provides that "any person who shall willfully or maliciously burn or cause to be burned  *  *  *  any dwelling-house, whether it be his own or that of another  *  *  *  shall be guilty of arson," &c.  *Held*, that the words "his own" and "of another" are intended to indicate the occupancy and not the ownership of the building. *State* v. *Fish*, 27 *N. J. L.* 323, and *State* v. *Lentz*, 92 *Id.* 17, followed.

On error to the Union County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the state, *Walter L. Hetfield*, prosecutor of the pleas.

For the plaintiff in error, *Frank J. Burns*.

The opinion of the court was delivered by

PARKER, J. The defendants, husband and wife, were convicted on an indictment for arson charging them with willfully and maliciously burning and causing to be burned the dwelling-house of the said Peter Duelks and Catherine Duelks then and there being. As the indictment originally read, the dwelling-house was stated to be that of one Delmonte, the change, consented to by defendants, being apparently prompted by the fact that the dwelling-house, though owned by Delmonte, was rented to, and occupied by, the defendants. The amendment of 1919 to section 123 of the Crimes act (*Pamph. L., p.* 257) enlarges the scope of the act by the words "whether it [the dwelling-house] be his own or that of another;" so that the arson charged was in burning their own dwelling-house. No doubt this change in the statute was due to the decision in *State* v. *Lentz,* 92 *N. J. L.* 17.

The first point argued is that the court required defendants to go to trial without having been served in due course with a list of the state's witnesses. Section 54 of the Criminal Procedure act requires, in cases of treason, the service of a copy of the indictment and a list of the jury *and witnesses:* but in cases of murder and certain other crimes, including arson, requires service of a copy of the indictment and list of the jury, saying nothing about witnesses. The language of the act is perfectly plain, and defendants' objection was clearly not well taken.

The next point relates to the exclusion of a question on cross-examination of one Pierson, a state's witness. Pierson testified that he had written a fire policy covering the personal property on the premises as agent for an insurance company; and the policy was received in evidence without objection. On cross-examination he stated that it did not strike him as unusual that $3,000 insurance was asked 'for at the present time. He was then asked: "Q. You had no doubts in your mind at the time you wrote the policy but that there were three thousand dollars worth of property?" This was objected to and excluded, and we think properly, as what he may have thought at the time of insuring was quite irrelevant to

the issue on trial. It is argued that the state claimed over-insurance as a motive and that the answer might have tended to negative the theory of over-insurance; but the answer to this is that the opinion of the agent or broker at the time of insuring was not competent as an index of actual value.

The next point arose on the cross-examination of Mr. Brewster, chief of the local fire department, who testified on direct examination that during and especially after the fire he had examined the furniture and other contents of the house, and found oil-soaked mattresses, clothes with oil or gasoline on them, signs of gasoline in the closets, and in various parts of the house, pig bladders and automobile inner tubes filled with gasoline or inflammable oil; also other matters apparently indicating preparation. On cross-examination he testified that these preparations must have taken "quite some time;" that he did not think it could have been done in half an hour; asked if it would consume an hour, working continuously, he answered, "That I couldn't say." "Q. I am asking you; you are in a better position than I and the jurymen." This was objected to, as the chief had not qualified as an expert, and excluded. We incline to agree that he was not shown an expert on incendiarism, but a better answer to the argument now made is that the question had been answered once, and that was enough.

The next point relates to the testimony of Philip Feuerstein, a professional insurance adjuster and appraiser of fire losses with nearly twenty years' experience. He was asked to put a valuation on a bed and mattress at the place in question, and this was objected to. He was cross-examined on his qualifications and plainly appeared fully qualified so far as related to disputes and settlements between insurer and insured, but the objection was pressed on the ground that he was not qualified for purposes of trial of a criminal indictment. We are quite unable to see how this affects his qualifications; if he was an expert on such valuations for any legal purpose, his qualification was valid in any judicial investigation in which he might be called.

The fifth point argued also·bears on the matter of value of some of the burned property. Defendant Peter Duelks was asked on cross-examination what he had paid for certain furniture several years previous to the trial. This was objected to and the objection overruled, and it is claimed that the value of the property several years before writing the policy is not competent on the question of value at the time the policy was written. But we think the rule is settled to the contrary. In *Luse* v. *Jones,* 39 *N. J. L.* 707, in the Court of Errors and Appeals, Mr. Justice Dixon, speaking for the court, said:

"The first exception insisted upon is, that the plaintiff was allowed to prove the cost of a bedstead, as tending to show its value. This cost was the price at which a regular dealer in such articles had sold it when new, in the ordinary course of trade. A sale so made was evidence of the market value of the thing when new, and the value of such goods when worn can scarcely be ascertained, except by reference to the former price and the extent of depreciation. Of course, the cost alone would not be a just criterion of the present value, but it would constitute one element in such a criterion, and the attention of the jury in this case was clearly directed to the importance which it deserved to have."

So, in *Budd* v. *Van Orden,* 33 *N. J. Eq.* 143 (at *pp.* 146, 147), Vice Chancellor Van Fleet said:

"The only absolute test we can have of the value of a merchantable article is what it has been sold for at a fair sale. All other means of ascertaining the value of a merchantable commodity are speculative, and must, to a greater or less extent, be uncertain."

And, in *Goodman* v. *Lehigh Valley Railroad Co.,* 82 *N. J. L.* 450 (at *p.* 456), in the Court of Errors and Appeals, where the value of certain buildings was in question, the court said:

"The evidence as to cost of the farm buildings was clearly admissible on the question of damage. Of course, the cost was not the measure of damages, but such cost is a fact to be considered in ascertaining the fair value of the buildings at

the time of the fire and from that the depreciation in value of the farm by reason of the fire."

Such is also the rule in New York, as laid down in *Jones* v. *Morgan,* 90 *N. Y.* 4 (at *p.* 10), where the cost of furniture bought in 1868 and 1869 was held evidential on the question of its value in 1875. The period over which the inquiry may be extended is ordinarily within the sound discretion of the court. *Montclair Railway Co.* v. *Benson,* 36 *N. J. L.* 557. See, also, 22 *C. J.* 183, § 135. The questions were entirely competent.

The sixth point argued relates to the cross-examination of defendant Peter, tending to show a previous conviction of crime, for the purpose of affecting his credit, as contemplated by section 1 of the Evidence act. *Comp. Stat., p.* 2217. The question asked was this: "*Q.* Mr. Duelks, you were under indictment for the crime of receiving stolen goods in October, 1920; and didn't you enter a plea of *non vult* to this crime, and the verdict of this court was that it imposed a fine of $150?" The attack is on the inclusion of the clause relating to the fine, and it is said that it was improper to put this before the jury. It is true that it was unnecessary to prove the sentence as part of the "conviction" (*State* v. *Henson,* 66 *N. J. L.* 601, 607; *Hill* v. *Maxwell,* 77 *Id.* 766; *State* v. *Runyon,* 93 *Id.* 16); but the fact remains that if the record of the "conviction" had been produced, which is the alternative method provided by the statute, it would have shown the sentence, and we are unable to see how defendant was harmed by anything developed on the cross-examination which would necessarily have appeared in the record.

The seventh point relates to several questions asked on the state's cross-examination of defendants' witness Yesneck Thomas, who said he had known the defendants about a year or two.

"*Q.* You never heard of his pleading guilty to a crime of receiving stolen property last November?"

This was objected to, allowed, but not answered.

"*Q.* Do you know what the plea of *non vult* is?

"*A.* I do not know.

"*Q.* Do you know that it is equivalent to guilt?"

This was objected to, but there was no ruling and it was not answered. The next question was objected to and overruled. Then followed this question:

"*Q.* Did you ever hear that the defendant entered a plea of *non vult* to the charge of receiving stolen goods?

"*A.* No, sir.

"*Q.* You never heard of that?

"*A.* No, sir."

There seems to have been no objection to either of these questions and the form in which they were put seems to meet the objection previously made, which was to the included statement that a plea of *non vult* means a plea of guilty. The next question was this: "*Q.* If you had, would you say that his reputation was good?" This was objected to, allowed, and defendant took an exception and this is argued as erroneous, but we think the point need not be decided because the witness answered, "I don't know nothing about it," and being pressed further on that line, reiterated that he couldn't say. All this, while perhaps unnecessary, seems to have been harmless.

The eighth point argued for reversal is that the court charged the jury, in part, as follows:

"I charge you that within the meaning of the statute if defendants occupied this house as a dwelling-house, being occupants as tenants, and if they are guilty of setting fire to this house, then the conditions of the statute are fulfilled; it becomes and was their dwelling-house within the meaning of the statute—so that the offence has been committed."

The alleged vice in this instruction relates to the clause that reads: "And if they are guilty of setting fire to this house, then the conditions of the statute are fulfilled," the point made being that the judge failed to use the words "willfully" and "maliciously." Technically, it would have been proper and no doubt better to have done so; but the whole trend of the charge was unmistakable, and by no effort of the imagination could it be said that the jury would infer that the defendants were guilty of a crime by the accidental

or unintentional or non-malicious firing of the house. The effect of the amendment of the statute already referred to is somewhat drastic. It apparently makes it a crime to burn one's own house intentionally for a purpose which, apart from the statute, would be entirely innocent. The word "willfully," of course, means intentionally, and the word "maliciously" connotes the willful doing of an illegal act. But, apart from this, the court was speaking to a particular case and the language used must be interpreted in relation to the case before it. *State* v. *Egan,* 84 *N. J. L.* 701, 706.

The ninth point argued relates to a portion of the instructions to the jury on the subject of evidence of good character, which reads as follows: "The defendants presented certain witnesses to show that their character was good; that they were in good reputation in the community in which they lived. That is a circumstance which you are entitled to consider; and if, with all the other circumstances that have been presented to you, the testimony in that regard should raise a reasonable doubt, it would be your duty to recognize it and give acquittal. In other words, the testimony is one element of the case to be considered by you with all the other elements so that on the full case you are to say whether a reasonable doubt exists in your minds as to the defendants having committed this offence. If you find such reasonable doubt, it is your duty to bring a verdict of acquittal." The claim is that this instruction runs counter to the language of *State* v. *Baker,* 53 *N. J. L.* 45, 47, where this court said:

"It is the right of a person charged with crime to have all the relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal."

But an instruction quite similar to that in the present case was considered in the very recent case of *State* v. *Randall,* 95 *N. J. L.* 452, where the Court of Errors and Appeals approved of an instruction, the effect of which, it said, was that "the jury should consider all of the relevant testimony, in-

cluding that relating to the defendant's good character or reputation, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal; but if, from the entire evidence, including that relating to good character, the jury believe the defendant guilty beyond a reasonable doubt, he should be convicted and the evidence of good character should not alter the verdict. And that was right."

We see no substantial distinction between the instruction as paraphrased in State *v.* Randall and that now under examination, and, on the authority of that case, we hold that there was no harmful error in the portion of the charge now attacked.

The tenth point argued covers the denial of motions to direct an acquittal and to instruct the jury that there was no evidence to justify a conviction, &c. We think there was ample evidence to go to the jury on the subject of the guilt of both defendants. We have already alluded to the presence in the house of mattresses and clothing soaked with oil or gasoline, of pigs' bladders and inner tubes for automobile tires filled with the same or a similar inflammable liquid, and it is unnecessary to do more than to allude to the facts as testified to that the female defendant was seen on the afternoon before the fire apparently working around the premises and that there was a strong odor of gasoline at that time; that the defendants both left about seven in the evening, and the fire broke out somewhere in the neighborhood of midnight; that it was an intensely hot and quick fire, and that the two defendants returned home about one forty-five A. M., having on the person of one of them all the savings bank books and the insurance policy for $3.000 on the personal property, although there was evidence to indicate that the personal property in the house was not worth more than $400. The motions to take the case from the jury were rightly denied as to both defendants.

The final point argued is that the court refused to order an acquittal on the ground that there was no proof that the

house was owned by the defendants, or either of them, and, in response to the application, ruled:

"The statute doesn't require that the property be owned by the person in charge. The language is, the dwelling-house of the defendant or another. Now, if it was occupied by them under lease it would be their dwelling-house for the purpose of the statute. I will have to deny your motion and give you an exception."

This ruling, as it seems to us, is manifestly correct. As a general rule, the dwelling-house of John Doe, in legal contemplation, is the house where John Doe dwells, and in cases of burglary, it will be found that this point has been ruled on many times. 1 *Bish. New Cr. Pro.*, § 573, ¶ 3. So, in the case of State *v.* Lentz, already cited, we held that where the statute speaks of the dwelling-house of another, the words "of another" are intended to indicate the occupancy and not the ownership of a building. See, also, *State* v. *Fish,* 27 N. J. L. 323. This point, therefore, is considered to be without substance

The judgment under review will be affirmed.