### BARRETT v. FOURNIAL.

Circuit Court of Appeals, Second Circuit.
August 4, 1927.

No. 268.

**I. Carriers ⊜�old146—Evidence held to justify instructing jury that storage contract was substituted for written transportation contract.**

In an action to recover for failure to deliver household articles and personal effects, evidence held to justify instructing the jury that the goods were held under a storage contract, which had been substituted for a written transportation contract, the terms of which defendant was asserting were applicable.

**2. Carriers ⊜�old136—Evidence that under French law limitations of transportation contract made in France would not apply to storage contract substituted therefor held to justify ruling to that effect.**

Evidence that a storage contract had been completely substituted for a transportation contract, both made in France, and expert testimony that under French law the provisions of the transportation contract would not apply to the storage contract, held to justify ruling that limitations of liability in the transportation contract were inapplicable to a case brought for failure to deliver the goods stored.

**3. Evidence ⊜�old474(19)—In action against express company for failure to deliver household goods and personal effects, plaintiff owner may testify to values.**

In an action against an express company for failure to deliver household furniture and personal effects, plaintiff owner held competent to testify to values of the goods.

**4. Evidence ⊜�old113(2)—In action against storage company for failure to deliver goods in 1919, evidence of values in 1911, when stored, held relevant.**

In action against storage company for failure to deliver goods, when delivery should have been made in 1919, evidence of the values of the goods in 1911, when they had been stored, held relevant as evidence of their value in 1919.

**5. Evidence ⊜�old113(2)—Where defendant storage company lost goods, so that evidence of values at time of default was unavailable, it could not complain of evidence of values when deposited.**

Where defendant storage company failed to deliver goods deposited with it, and by its loss of the goods made it impossible for plaintiff to obtain evidence of their value at time of default, it cannot complain of evidence showing value when deposited.

**6. Evidence ⊜�old113(2)—Trial judge held not to have abused discretion in permitting evidence of values of goods in 1911 to prove values in 1919.**

Where goods had been lost by storage company, which had failed to deliver them, trial judge held not to have abused his discretion in permitting plaintiff to offer evidence of the values of the goods when deposited in 1911, as evidence of their values in 1919, when they should have been delivered.

**7. Evidence ⊜�old547—Expert evidence of values of rugs, antiques, portières, and objects of art held competent, notwithstanding witness gave estimates from oral descriptions of articles.**

Expert evidence of the values of rugs, antiques, portières, and objects of art held competent, notwithstanding the witness had never seen the goods, but gave his estimates from having descriptions of the articles read to him.

**8. Warehousemen ⊜�old34(9)—Value of goods stored held for jury.**

In action against storage company for default under contract of storage in failing to deliver goods question of the values of the goods at the time of the default held for jury.

**9. Appeal and error ⊜�old932(1)—Where evidence justified amount of verdict for failure to deliver goods, it could not be presumed jury erroneously included deteriorated goods at excessive value.**

Where the evidence in an action against a storage company for failure to deliver goods justified the amount of the verdict, it could not

be presumed that the jury erroneously included in the verdict an excessive estimate of goods which deteriorated during the storage period, especially in view of instruction that they must find that the goods had not deteriorated.

In Error to the District Court of the United States for the Southern District of New York.

Suit by Anna Fournial against William M. Barrett, as president of Adams Express Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This suit was instituted by Madame Fournial, a French woman residing in Bucharest, Roumania, to recover the value of household goods and personal effects deposited, as she claims, for storage, with F. Massonneau & Cie. in Paris in 1911. Massonneau is the name under which the defendant Adams Express Company conducted a storage and transportation business in Paris at that time. The defendant admits receipt of the goods and failure to return them when demanded on March 5, 1919, but contends that its liability is limited to the sum of 250 francs for each of the nine cases not returned, by reason of a receipt delivered to Madame Fournial four days after the deposit of her goods. This document, dated April 15, 1911, acknowledged receipt of nine cases and one trunk, said to contain used furniture, "to be shipped by the most accessible route by rail or water and according to the conditions printed on the back of this receipt to Bucharest." On the back thereof were printed "Conditions of Transport and of Insurance." They start with the statement, "This shipment is accepted by F. Massonneau & Cie. as carriers," and paragraph numbered 5 limits liability to "250 francs per case, unless the exact value of the merchandise has been placed in letters upon the declaration of the shipment, and the additional rate upon the total value has been included in the transportation charges." The trunk mentioned in the above receipt was subsequently redelivered to Madame Fournial and is not involved in this litigation.

The case was submitted to the jury under a charge to the effect that the contract under which the goods were held and upon which the plaintiff was suing was a contract for storage, not for transportation, and that the provision of the receipt which limited liability to 250 francs for each case undelivered had no application. The only issue left to the jury's decision was that of the reasonable market value of the goods in Paris in March, 1919, when they should have been returned. The

jury found a verdict of $9,637, and judgment was entered accordingly.

Stockton & Stockton, of New York City (Branch P. Kerfoot and George M. Billings, both of New York City, of counsel), for plaintiff in error.

Moffat & Devlin, of New York City (Frederick J. Moses, Stanley M. Moffat, Edward I. Devlin, Jr., and De Witt C. Jones, Jr., all of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] Numerous assignments of error are addressed to the court's ruling that the plaintiff's recovery was not limited to the equivalent of 250 francs per case. We think the evidence is clear that, whatever may have been the original arrangement between the parties, the goods were ultimately held on a bailment for storage. Plaintiff's Exhibit No. 6 is a receipted bill, paid January 5, 1914, for 18 months' storage and insurance. The defendant's letter of February 12, 1914, introduced as Plaintiff's Exhibit No. 7, states that they will hold the goods in storage as long as plaintiff wishes. Plaintiff's brother testified to paying his sister's bills to defendant during the years of the war and to seeing the cases in the basement of the Express Company's office in January, 1917.

Assuming that the contract was originally one for transportation and evidenced by the receipt dated April 15, 1911, and that some delay in starting transportation might have fallen within the contract, 7 years' delay was certainly never intended, and we cannot accede to the contention that the transportation contract remained in force all those years. We consider the evidence so clear as to justify the court in instructing the jury that the goods were held on a bailment for storage when their return was demanded.

[2] The expert witnesses to French law seem to be agreed that, granted the making of a subsequent contract for storage, the limitation of liability stated in the receipt would not apply to it. M. Fabry unequivocably so states. M. Caen does not appear to dispute this as a statement of law, but to question whether the transportation contract was in fact superseded by a deposit contract. He says:

"As regards the answers made by M. Fabry, I admit that, as far as principles of French law are concerned, his replies are correct, but in his cross-examination he gives

a very contestable answer when he affirms that the payment of warehousing charges necessarily implies the existence of a deposit contract."

The difference between them seems to be what we should call one of fact; that is, whether the parties intended to change the obligations evidenced by the receipt of April 15, 1911. That fact the court directed the jury to find for the plaintiff, and, as already stated, we think the evidence clearly justified this. Consequently there was no error in ruling that the limitation of 250 francs per case did not apply.

The other assignments of error necessary to consider relate to the contentions that the verdict is not supported by competent evidence establishing damages, and that incompetent evidence of value was admitted over defendant's objections and exceptions.

To establish the value of the goods on the date of default, March 5, 1919, the plaintiff introduced evidence of their value in April, 1911, when delivered to defendant, the testimony of the expert Benguiat that he did not think their physical condition would deteriorate during storage, if properly packed, and that general values in Paris, particularly of antiques, increased between 1911 and 1919, and the opinion of Benguiat as to the minimum values in Paris in 1919 of antique Oriental rugs, etc., of the kind described by the plaintiff.

Madame Fournial testified that the cases and their contents were in very good condition when delivered, that before delivering them she made an itemized list thereof, and that she knew the prices in francs in Paris in April, 1911, for articles similar in quality and condition to those listed. She then produced the list, and wrote opposite each item a price in gold francs which she says she knew represented the fair amount which could have been realized upon the sale of said articles in Paris on April 11, 1911. This list was introduced in evidence as Plaintiff's Exhibit No. 3. She also prepared a second list, in which she gave a more specific description of each of the articles, with a statement in many instances concerning its quality, age, appearance, condition, and, when known to her, its purchase price. This list was introduced as Plaintiff's Exhibit No. 10.

[3] The defendant objected to this evidence on the ground (1) that the plaintiff was not qualified to testify as to values; and (2) that the value and condition of the goods in 1911 was not relevant to their market value in March, 1919.

As to the competency of the plaintiff to testify to the value of her household furniture and personal effects we have no doubt. In discussing the "Knowledge of Value Standard" the learned author of Wigmore on Evidence (2d Ed.) § 716, writes as follows:

"*Personal Property Value.* Here the general test, that any one familiar with the values in question may testify, is liberally applied, and with few attempts to lay down detailed minor tests. The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objection to this policy."

This statement is amply supported by the cases. Gorman v. Park & Tilford, 100 F. 553 (C. C. A. 2); Union Pac. R. Co. v. Lucas, 136 F. 374 (C. C. A. 8); Chicago & E. R. Co. v. Ohio City Lumber Co., 214 F. 751 (C. C. A. 6); Berry v. Ingalls, 199 Mass. 77, 85 N. E. 191; Jones v. Morgan, 90 N. Y. 4, 43 Am. Rep. 131; Bailey v. Ford (Md.) 135 A. 835.

[4-6] The objection that the value and condition of the goods in 1911 was too remote to be relevant we regard as also without merit. In Jones v. Morgan, supra, which was an action against a warehouseman for failure to redeliver household furniture, a similar objection was made. The court ruled that within what range of time testimony of value should be admitted was a matter within the discretion of the trial judge. There the original cost of the property, some of which was purchased 7 years before the deposit for storage, and the manner in which it had been used, and its condition were proved. See, also, Prior v. Morton Boarding Stables, 43 App. Div. 140, 59 N. Y. S. 287; Cheever v. Scottish Union & Nat. Ins. Co., 86 App. Div. 328, 83 N. Y. S. 730; Jeffries v. Snyder, 110 Iowa, 359, 81 N. W. 678; Pitt v. Texas Storage Co. (Tex. App.) 18 S. W. 465. The defendant, having by its loss of the goods made it impossible for the plaintiff to give direct evidence of their condition and value at the date of the default, is in no position to complain that she resorts to circumstantial proof by showing their value and condition when deposited. See Markoe v. Tiffany & Co., 26 App. Div. 95, 49 N. Y. S. 751. We are satisfied that the trial judge did not abuse his discretion in receiving the evidence. In his charge he carefully limited the effect of the evidence of value in 1911 in its bearing upon the ultimate issue of value in 1919.

Objection is also made to the testimony of Mr. Benguiat, a dealer in rugs, fabrics, antiques, and objects of art. After he had been qualified as an expert appraiser of articles of that character, familiar with prices in London, Paris, and New York, he was read the description of certain articles listed in Exhibit No. 10 and asked to give his opinion of their value in Paris in March, 1919, assuming them to have been of the quality and kind described and to have been stored in a warehouse from 1911 to 1919. The questions related to antiques, being Oriental rugs, portières, and objects of art. He gave values for these items, which he said represented the minimum values for the poorest quality of goods of the kind described. He also testified that, if the goods were properly packed, their physical condition would not depreciate during storage, and that the value of such goods had increased more than 50 per cent. between 1911 and 1919.

Mr. Benguiat was cross-examined, and the defendant produced its own expert, whose testimony was chiefly directed toward showing that it was impossible to place a market value upon the Oriental rugs and other articles valued by Benguiat without seeing them. At the close of the case, defendant moved to strike out all of Benguiat's testimony, on the ground that he was not properly qualified as an expert, and also that the description of the goods was too incomplete, and their condition in 1919 too uncertain, to be used as the foundation for a hypothetical question as to their market value.

[7, 8] We are satisfied that he was sufficiently qualified as an expert. The other grounds of objection affect, we think, the weight of his testimony, rather than its competency. He could not, of course, examine the goods; the defendant had made that impossible. He finds the descriptions sufficiently definite, so that he says he knows the market value of the articles. He gives the minimum value for articles of the kind described, and says he takes into account the fact that they have been in storage for eight years. They were in good condition when delivered, and there is no evidence of anything to cause deterioration, except the passage of time. To hold that under such circumstances expert testimony as to value is incompetent would preclude proof of the damage caused by the defendant's wrongful act. We think the evidence competent and sufficient to have been submitted to the jury.

[9] Finally, complaint is made that the verdict included the equivalent of 6,000 francs for loss of articles of clothing, valued at that figure in 1911, but necessarily of little or no value in 1919, because of change in style. It is impossible, however, to say that the jury included that sum, or any sum, for loss of clothing. The articles valued by Benguiat, if the jury accepted his figures, had a value of $8,000. The other goods, excluding all items of clothing, might under the evidence have been found to be worth more than enough to bring the verdict up to $9,637. The jury were charged that, in order to make applicable to 1919 values the values of 1911, they must find that the physical condition of the goods had not deteriorated. Many of the goods, such as silverware, china, and glass, could not deteriorate in storage by mere lapse of time; others were of a kind which the jury may have thought did deteriorate. It is impossible to determine for which articles the jury allowed recovery in its general verdict. The trial judge was satisfied that the verdict was not excessive, for he refused to set it aside.

We find no error in the conduct of the trial, and the judgment is therefore affirmed, with costs.