Jasen, J.
(dissenting). I am compelled to dissent from the majority’s analysis of the novel and significant legal issues presented on this appeal.* Considerations of fundamental *453 public policy, as enunciated by statute and judicial decision, preclude the courts from lending their assistance to those seeking indemnification for the payment of ransom money. In my view, judicial recognition of a ransom indemnification cause of action would violate long-standing and deep-rooted conceptions of public justice. Moreover, it was error to excuse a plaintiff in a civil action for damages from testifying on a material issue because of an asserted claim of duress. An affirmance would also result in the unfounded creation of a new evidentiary privilege.
There are basic tenets of the common law which supervene and control the operation and effect of other public law, as well as private contract. (Riggs v Palmer, 115 NY 506, 511; see The Kensington, 183 US 263, 269.) These principles are "dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.” (115 NY, at pp 511-512.) One of the most fundamental obligations of the judiciary, under a common-law system of jurisprudence, is the duty to deny litigants the assistance of the courts when judicial intervention "would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.” (Loucks v Standard Oil Co., 224 NY 99, 111 [Cardozo, J.].) The courts should withhold their aid whenever "the cause of action in its nature offends our sense of justice or menaces the public welfare” (p 110).
Of course, members of the judiciary are not free to refuse to enforce rights on the basis of their own personal views as to what policies are fair, expedient and just. (224 NY, at p 111.) The courts are particularly reluctant to hold that a cause of action violates public policy in situations where the Legislature has already indicated its recognition and approval of the right sought to be asserted. (Messersmith v American Fid. Co., 232 NY 161, 164-165.) Once the Legislature has adopted a policy and has made that policy the law of this State, it is beyond the province of the courts to question the ultimate wisdom of that choice. (Montgomery v Daniels, 38 NY2d 41, 53.) Nevertheless, where a definite policy has not been set out by State Constitution or statute, the courts may, by judicial decision, express State policy. To deny the courts the power to speak on public policy would deny the courts the power to *454 pronounce the law, since all law reflects, to some degree, public policy. Where the maintenance of a cause of action would be "manifestly injurious to the public interest or shocking to our morals or contrary to fundamental principles of justice or 'deep rooted traditions of the common weal’ ”, the courts may properly refuse to enforce it. (Shannon v Irving Trust Co., 275 NY 95, 103; Hollis v Drew Theol. Seminary, 95 NY 166.)
In determining what the public policy is, the courts are referred to the law of the State, whether found in the Constitution, statute, or in judicial decisions and records. (Glaser v Glaser, 276 NY 296, 302; Mertz v Mertz, 271 NY 466, 472.) However, public policy may also emanate from other sources. Strong public policy may be found in the "prevailing social and moral attitudes of the community”. (Intercontinental Hotels Corp. [Puerto Rico] v Golden, 15 NY2d 9, 14.) From my review of the authorities, I would conclude that if a cause of action for ransom indemnification is found to be against the substantial interest of society as a whole, the courts, unless otherwise directed by Constitution or statute, should refuse to entertain suits seeking to enforce such a right of action.
The thief, by first removing Kraut’s enamel collection from the defendant’s warehouse and then holding it up for ransom, committed the serious felonies of grand larceny in the first and second degrees. (See Penal Law, §§ 155.05, 155.35, 155.40.) While this unlawful conduct gives rise to a private action for damages, in addition to the private injury, the peace of the community and the dignity of the State have also been gravely offended. (Cf. People v La faro, 250 NY 336, 341.) Police officers, as guardians of the public peace, have the obligation to investigate and suppress this violation of law. (250 NY, at pp 342-343.) Upon the capture of the wrongdoer, the State will seek redress for the offense against it in the context of a criminal proceeding. It is quite apparent, and hardly necessary to add, that the public policy of this State is set against the commission of theft and extortion, as these felonies pose grave threats to societal peace, safety and order.
The State has an interest in assuring the prosecution of those who transgress its penal statutes. The law must throttle any tendency that would corrupt or hinder its pursuit of the guilty. (Union Exch. Nat. Bank v Joseph, 231 NY 250, 254.) As Judge Cardozo has stated, "[tjhere is to be no traffic in the *455 privilege of invoking the public justice of the state.” (231 NY, at p 253.) The authorization of a cause of action for the indemnification of ransom payments would infringe this pronounced State policy. Citizens, whose property was stolen while in the custody of others, would be encouraged to pay ransom for the return of the property knowing that the burden of any monetary loss would not ultimately fall on their shoulders. Co-operation with police investigations would be discouraged by the fact that police pursuit, whether successful in apprehending the culprits or not, might hinder ransom negotiations or result in the destruction or secretion of the property. Society must depend on the willingness of individual citizens to steadfastly come forward and report crime, assist in police investigation, and, if need be, testify at trial. (See People v Hicks, 38 NY2d 90.) Allowing the recovery over of ransom payments threatens to deprive society of the co-operation necessary for safety of all of its members by supplying individual citizens with an incentive to keep silent and make payments to criminals. The law cannot properly encourage citizens to act upon individual self-interest to the detriment of the society as a whole and should not be set in motion to assist those who have "chosen to put private welfare above duty to the state.” (Union Exch. Nat. Bank v Joseph, 231 NY 250, 254, supra.) Courts may not tolerate any arrangement that stifles the law for private advantage (p 255).
Aside from the deleterious incentive given to the victims of crime, the creation of the ransom cause of action would have an obvious tendency to encourage would-be felons to commit criminal acts. Ransom payments, of course, reward wrongdoers for their transgression. The law recognizes that law-abiding individuals who make such payments under duress should not themselves be subject to criminal liability. Thus, a property owner who pays ransom is not subject to punishment, even though his action may adversely affect the community interest. However, a recovery over of that ransom payment poses even greater threats to the general community and exceeds permissible bounds. Criminals will be induced to steal bailed property and hold it for ransom, since the rightful owner will no longer be reluctant to pay. While the owner might not have been willing to expend his own resources in order to recover back his property, the reluctance disappears when another can be compelled to pay. In this manner, the peace and safety of all members of the community is threat *456 ened since the resolve of individual citizens against caving in to the criminal element has been weakened.
The dangers presented by the novel cause of action asserted by the plaintiff are compounded when the property owner refuses to reveal identities of the parties with whom he dealt. A refusal to disclose the name of the thief or his agent not only may frustrate efforts of law enforcement officials and private investigators to track down the culprits, but might also, under certain circumstances, violate the Penal Law. (See Penal Law, § 205.50.) Thus, the reliance of the majority on Jones v Morgan (90 NY 4) is misplaced. In Jones, the plaintiff did not, in stealth, attempt to ransom her property. Rather, recovery was made with the assistance of detectives, and, significantly, by the use of legal proceedings, such steps necessarily entailing the expenditure of funds. The court, therefore, allowed the defendant credit for the property recovered, less the expenses of the plaintiff. (90 NY, at p 11.) If Jones did, in fact, stand for the proposition asserted by the majority, I would believe it to be incorrectly decided. Although due respect must be given to a venerable case and to the learned Judges of this court who participated in its decision, the import of a ransom indemnification cause of action is so detrimental to the public interest that prior precedent should now be set aside.
The majority seems to believe the plaintiffs payment of ransom was a laudable attempt to mitigate damages. However, the law requires only that an injured party make reasonable efforts to limit the extent of the damage. (Losei Realty Corp. v City of New York, 254 NY 41, 47.) Clearly, there can be no requirement that owners of property make risky and dangerous efforts to ransom their property. Moreover, the plaintiffs action was not motivated by a desire to reduce the burden on Morgan & Brother Manhattan Storage. Kraut stated that he seized upon the opportunity to ransom his property "because of my own selfishness”. While the plaintiff may, as he deemed fit, permissibly pay the ransom, he may not attempt to shift the burden of that payment onto others, whether as an attempt to "mitigate” damages or otherwise. It should be noted that ransom negotiations are not always successful in obtaining the return of the stolen property. While Kraut may have recovered most of his property, the next person to go the ransom route might not only fail to rescue his property, but manage to interfere with and impede *457 official, as well as private investigations, frustrating their purpose and endangering the lives of those conducting such inquiries.
The majority indicates its belief that the plaintiff is somehow equitably entitled to relief from the courts. Yet the plaintiff was moved to ransom his property solely by the temptation of his own selfish interest. While we may sympathize with the plaintiff for his plight, we can hardly lend him judicial assistance when to do so would involve so grave an invasion of public policy and the public interest. "Excuse would seldom fail if temptation could supply it.” (Union Exch. Nat. Bank v Joseph, 231 NY 250, 254, supra.)
The majority would also exempt a plaintiff in a civil action for damages from testifying as to material facts where he had been subjected to threats and duress. Such an exemption would, in effect, privilege evidence from disclosure. In my view, the creation of such a privilege is both unwarranted and unwise.
The general policy of the law requires that all witnesses fully disclose their knowledge so that justice may prevail. (People ex rel. Mooney v Sheriff of N. Y. County, 269 NY 291, 295.) The CPLR requires that there be full disclosure of all evidence "material and necessary” to the prosecution or defense of action by any party to that action. (CPLR 3101, subd [a], par [1].) This provision should be interpreted liberally, with usefulness and reason supplying the ultimate standard. (Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.) In this case, the name of the intermediary, who was an established member of the antique trade, would be essential to verify the fact and amount of payment. If the defendant is, in theory, obligated to indemnify the plaintiff for the ransom payment, the defendant is, at a minimum, entitled to investigate whether the plaintiff, in fact, made the payment he claims to have made. That the plaintiff’s personal friend would corroborate the story is hardly an assurance to the defendant.
The granting of a privilege from disclosure creates an exception to the general rule of full disclosure. The question of whether or not additional privileges should be recognized is best left to the judgment of the Legislature. (People ex rel. Mooney v Sheriff of N. Y. County, 269 NY 291, 295, supra.) Suppression of truth is an act which is undertaken only as a "grievous necessity”. (McMann v Securities & Exch. Comm., 87 F2d 377, 378.) This case does not present circumstances so *458 compelling as to warrant this court in proceeding to create a new privilege in the absence of legislative sanction.
The majority contends that there are "exceptional circumstances” which justify the nondisclosure. However, shorn of the public policy question previously discussed, this suit is a relatively uncomplicated civil action for damages. The only exceptional circumstance is that the plaintiff contends that his life, as well as the lives of his family, has been threatened. The plaintiff’s remedy, common to all those who would prefer to avoid the rigors, major and minor, attendant to civil litigation, is not to sue. Moreover, although the majority assumes that the plaintiff’s claim is sincere, it would be all too simple for such claims to be falsely asserted. While this case may not entail perjury or cynical manipulation, other cases undoubtedly will. The opportunities available for fraud would be greatly enhanced. The law, in setting out its general rules, "looks beyond the specific instance, where the evil may be small or nothing.” (Union Exch. Nat. Bank v Joseph, 231 NY 250, 254, supra J The need to protect the integrity of the judicial system should more than outweigh whatever interest there may be in assisting this particular plaintiff in proving his case.
The holding that the defendant did not adequately preserve his objection to the plaintiff’s refusal to disclose is not supported by the record. When the issue as to the identity of the intermediary first arose (while David Keller, a friend of the plaintiff’s was testifying), the defendant interposed a timely demand for the intermediary’s name. In colloquy between the court and counsel for all parties, the attorney for the defendant told the trial court of his interest in ascertaining the name of the intermediary. "The issue before us now is I have made a demand for the name of the intermediary, the go-between. I believe if I do not have this information, I am substantially prejudiced. I asked Mr. Kraut that information on the examination before trial and received the same statement from him * * * I am now making a formal application to the Judge, to your Honor, and if we do not get it, then I believe there is substantial prejudice, and I want that for the record.” The court, after hearing further argument, ruled that the refusal "goes to his credibility, and the weight of the evidence rather than a determination by me that it didn’t happen in the first place. That’s a question for the jury. I can’t grant your motion.”
There can be no doubt that the issue was adequately preserved for appellate review. It is no longer necessary for *459 counsel to make formal exceptions to rulings of the court. All that is necessary is that a party make known to the court the action it requests the court to take. (CPLR 4017.) In this case, the defendant advised the court of the requested action, gave the court an opportunity to alter its course, and alerted opposing counsel as to the nature. of the objection. (See 4 Weinstein-Korn-Miller, NY Civ Prac, par 4017.04.) It can hardly be said that the defendant failed to press the disclosure issue in light of counsel’s stated "demand” for release of the intermediary’s name. Since the policy served by requiring that objections be stated has been satisfied, it is pointless, and highly formalistic, to require more.
I conclude that the owner of bailed property should not be permitted to recover a ransom payment from his negligent bailee. Even if such a cause of action may be permissibly asserted, it was error to excuse the plaintiff from disclosing the name of the intermediary. Since my own view is at so substantial a variance with that of the majority, I am compelled to dissent from their decision and would reverse the order of the Appellate Division.

 This appeal is limited to only part of the order of the Appellate Division which affirmed the judgment entered on the fourth cause of action (referred to in the judgment as the second cause of action) in the complaint for the recovery of ransom money.